USCA1 Opinion

 

 May 18, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2046 CARMEN FRAGOSO, a/k/a CARMEN FRAGOSO DE CONWAY, Plaintiff, Appellant, v. DR. MARIA A. LOPEZ, ET AL., Defendants, Appellees. _________________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on April 5, 1993 is corrected as follows: On page 5, line 16 delete (1976 & Supp. 1989) On page 7, footnote 5, line 1 change "provision" to "language" On page 7, footnote 5, lines 5-6 delete P.R. Laws Ann. tit. 26, 4021(1) (Supp. 1992). On page 10, line 7 delete (1976 & Supp. 1989) UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________________ No. 92-2046 CARMEN FRAGOSO, a/k/a CARMEN FRAGOSO DE CONWAY, Plaintiff, Appellant, v. DR. MARIA A. LOPEZ, ET AL., Defendants, Appellees. _____________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ___________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ___________________________ Hector M. Alvarado-Tizol on brief for appellant. ________________________ Efren T. Irizarry-Colon and Elisa Figueroa-Baez on brief for _______________________ ___________________ appellees. Jose Luis Gonzalez Castaner on brief for Juan Antonio ______________________________ Garcia, Commissioner of Insurance of the Commonwealth of Puerto Rico. _________________________ April 5, 1993 _________________________ SELYA, Circuit Judge. Plaintiff-appellant Carmen SELYA, Circuit Judge. ______________ Fragoso de Conway (Fragoso), a citizen of New Jersey, appeals from an order of the district court granting summary judgment in favor of certain defendants, including an insurer, Corporacion Insular de Seguros (CIS), which became insolvent during the pendency of the appeal. We now conclude (1) that there is no compelling reason, based on either Erie R.R. Co. v. Tompkins, 304 _____________ ________ U.S. 64 (1938), or Burford v. Sun Oil Co., 319 U.S. 315 (1943), _______ ___________ for us to abstain in favor of the liquidator's forum, (2) that the appeal may proceed in the ordinary course, notwithstanding CIS's financial plight, and (3) that appellant's arguments on the merits are unavailing. Consequently, we affirm the judgment below. I. BACKGROUND I. BACKGROUND Dr. Maria A. Lopez first treated appellant's mother, Milagros Rodriguez de Fragoso, as an outpatient. She diagnosed Mrs. Rodriguez's condition as transient cerebrovascular ischemic activity and referred her to Dr. Mojica for a neurological consultation. On October 13, 1984, Mrs. Rodriguez was admitted to Doctor's Hospital complaining of numbness in her limbs. Dr. Lopez performed a cardiology evaluation the next day. On October 18, Mrs. Rodriguez complained of tightness in her chest. Dr. Lopez sharply reduced the prescribed medication and ordered an electrocardiogram. Later that evening, Mrs. Rodriguez died of heart failure. Plaintiff's cousin, Nilda Fragoso de Rodriguez, 3 suspected medical malpractice. In December 1984, she relayed her suspicions to appellant. On January 16, 1985, appellant contacted Attorney Hector Alvarado-Tizol to explore the possibility of a suit. That same day, appellant hand-delivered a letter to Doctor's Hospital requesting her mother's medical records.1 Appellant then returned to New Jersey, leaving matters in her attorney's hands. On April 5, 1989 over four full years after her mother's death appellant invoked diversity jurisdiction, 28 U.S.C. 1332 (1988), and sued Lopez, CIS, and several other health-care providers in Puerto Rico's federal district court. (CIS was joined as a defendant pursuant to Puerto Rico's direct action statute, P.R. Laws Ann. tit. 26, 2003 (1990).) Following a lengthy period devoted to discovery and pretrial skirmishing, and marked by settlement of the plaintiff's differences with other named defendants, Lopez and CIS sought summary judgment. On July 13, 1992, the district court found the suit to be barred by Puerto Rico's one-year statute of limitations governing negligence actions and granted the defendants' motion. The court thereafter denied Fragoso's motion for reconsideration. This appeal ensued.2 II. THE REQUEST TO DISMISS THE APPEAL OR STAY PROCEEDINGS II. THE REQUEST TO DISMISS THE APPEAL OR STAY PROCEEDINGS ____________________ 1In her deposition, Fragoso speculated that the letter may have been delivered during the spring of 1985. She now concedes that it was delivered on January 16, 1985. 2When summary judgment was entered, Lopez and CIS were the sole remaining defendants. They are, therefore, the sole appellees. 4 On December 23, 1992, shortly after this appeal had been assigned for hearing, appellees filed a motion relating that, on December 21, 1992, the Puerto Rico Insurance Commissioner (the Commissioner) had petitioned for the liquidation of CIS; that a superior court judge, discerning a $28,000,000 capital insufficiency, appointed the Commissioner as liquidator of CIS under P.R. Laws Ann. tit. 26, 4004 (1976); and that the judge had issued an order remitting all claims against CIS to the claims process demarcated within the liquidation proceedings.3 Appellees requested that the claim underlying the instant appeal be so forwarded (and the appeal dismissed), or, alternatively, that proceedings herein be stayed pendente lite pursuant to a provision of Puerto Rico's Insurance ________ ____ Code.4 We granted an interim stay of proceedings and requested ____________________ 3The original order was soon amended and we refer herein to the amended version as the Liquidation Order. Paragraph 25 of the Liquidation Order provides that "any claims against [CIS] or its insurers under an insurance policy or any[] other kind of claim, be remitted to the Liquidator . . . . " 4The statute provides in pertinent part: Judicial proceedings to which [an] insolvent insurer is an interested party or in which [it] is bound to represent a party in a court of competent jurisdiction in Puerto Rico shall be temporarily suspended for six (6) months or that period in addition to the six (6) months granted by a court with jurisdiction, from the date the insolvency was determined to permit the [liquidator] an adequate defense of all causes pending action. P.R. Laws Ann. tit. 26, 3818 (Supp. 1989). 5 supplemental briefing from the parties and the Commissioner. The briefing period having passed, we now consider appellees' and the Commissioner's requests that we remit the underlying claim to the liquidator's claims process or, at least, stay proceedings in this case pending the expiration of the full cooling-off period stipulated in the Insurance Code. A. The Erie Doctrine. A. The Erie Doctrine. __________________ We start with bedrock: a state court cannot enjoin federal proceedings. See General Atomic Co. v. Felter, 434 U.S. ___ __________________ ______ 12, 17 (1977); Donovan v. Dallas, 377 U.S. 408, 413 (1964). _______ ______ Thus, the prohibitions contained in the Liquidation Order do not bind this court. The truism, however, does not end the matter. Relying on the Rules of Decision Act, see 28 U.S.C. 1652 (1988), and ___ the familiar Erie doctrine, 304 U.S. at 78, the Commissioner ____ posits that, in the exercise of diversity jurisdiction, this court must apply several provisions of Puerto Rico's Insurance Code collectively requiring dismissal of the claim against CIS and a six-month stay of the claim against Lopez. See P.R. Laws ___ Ann. tit. 26, 3818, 3819, 4021, 4032. We disagree. A federal court sitting in diversity is not required automatically to follow all particulars of a state court's process for dispute resolution. Rather, Erie and its progeny ____ identify certain principles that must be used to cull wheat from chaff. The "twin aims" animating the Erie doctrine are ____ "discouragement of forum-shopping and avoidance of inequitable 6 administration of the laws." Hanna v. Plumer, 380 U.S. 460, 468 _____ ______ (1965). These goals are intertwined with the policy that a federal forum "should conform as near as may be in the absence of other considerations to state rules even of form and mode" when those rules "may bear substantially" on the outcome of the litigation. Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. ____ __________________________________ 525, 536 (1958); see Guaranty Trust Co. v. York, 326 U.S. 99, 109 ___ __________________ ____ (1945); Feinstein v. Massachusetts Gen. Hosp., 643 F.2d 880, 884 _________ ________________________ (1st Cir. 1981). After giving respectful consideration to the Commissioner's views, we believe that processing Fragoso's appeal without regard to Puerto Rico's legal framework for dealing with insolvent insurers will not offend the Erie rule. ____ For one thing, it is inconceivable that a defendant's differential ability, depending upon whether the suit is brought in a federal or in a commonwealth court, to invoke Puerto Rico's procedural law anent insolvent insurers after trial and entry of judgment will influence a litigant's choice of forum. When a plaintiff selects a forum at the commencement of litigation, she is unlikely to weigh the possibility that a defendant's insurer might become insolvent years later, thus influencing the procedural status of pending appeals. We think, too, that the uncertainty as to how a Puerto Rico appellate court might apply the laws in question would stymie attempted forum-shopping. Although the Commissioner maintains that a commonwealth court would dismiss the appeal against CIS, the forecasted result is by no means certain. The Insurance Code directs a six-month stay 7 of all proceedings against the insolvent insurer. See P.R. Laws ___ Ann. tit. 26, 3818, quoted supra note 4. While the _____ Commissioner assumes that P.R. Laws Ann. tit. 26, 4021(1) mandates dismissal of the appeal,5 he neither suggests how to reconcile this provision with section 3818 nor explains how an appellate proceeding filed against the insurer before the issuance of a liquidation order comes within the contemplation of section 4021. The first Erie consideration, then, does not favor ____ application of Puerto Rico's Insurance Code provisions to the instant appeal. For another thing, declining to apply the Commonwealth's procedural laws here will not advantage Fragoso as compared with similarly situated, non-diverse plaintiffs. Cf. ___ Erie, 304 U.S. at 74-75. A principal function of the Insurance ____ Code provisions is to allow adequate time for defense preparation and minimize expense. Here, additional time is wholly unnecessary; the case was fully briefed prior to the entry of the Liquidation Order and the merits are straightforward, not requiring oral argument. See Fed. R. App. P. 34(a) (providing ___ for eschewal of oral argument where "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument"); 1st Cir. Loc. R. 34.1(a)(2)(iii) (same). Thus, ____________________ 5The language upon which the Commissioner relies states in pertinent part that "no action at law or equity shall be brought against the insurer or liquidator, whether in Puerto Rico or elsewhere, nor shall any such existing actions be maintained or further presented after issuance [of a liquidation order]." 8 refusal to remit the action against CIS to the liquidator's forum or to stay the action against Lopez works no inequity from the standpoint of either preparation or defense costs. What is more, Puerto Rico's insolvent insurers' liquidation provisions do not bear in the slightest on the substantive outcome of the appeal. These laws provide a procedure through which claims against the insurer can be resolved and its assets equitably distributed. They do not absolve the insurer of any substantive liability. There is no basis for concluding that this court will reach a result regarding the underlying merits of Fragoso's appeal that is any different from the result that a Puerto Rico court would reach, had it stayed the action, or that the liquidator's forum would reach, had the action been forwarded there. Thus, we reject the Commissioner's argument that the Erie doctrine compels us to dismiss the appeal against CIS and ____ stay the proceeding against Lopez. B. Relevancy of Burford Abstention. B. Relevancy of Burford Abstention. ________________________________ In the alternative, the Commissioner urges that we abstain from hearing the instant appeal under the rule of Burford _______ v. Sun Oil Co., 319 U.S. 315 (1943). In its most recent ____________ discussion of Burford abstention, see New Orleans Pub. Serv., _______ ___ ________________________ Inc. v. City Council of New Orleans [NOPSI], 491 U.S. 350, 360-64 ____ ___________________________ _______ (1989), the Supreme Court explained that the doctrine counsels federal courts "sitting in equity" to refrain from interfering with "proceedings or orders of state administrative agencies" 9 when "timely and adequate state court review is available" and: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' Id. at 361 (quoting Colorado River Water Conservation Dist. v. ___ _________________________________________ United States, 424 U.S. 800, 814 (1976)). In sum, NOPSI cabins _____________ _____ the operation of the Burford doctrine. Post-NOPSI Burford _______ _____ _______ applies only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate. Abstention will be "the exception, not the rule." Id. at 359 (citation and internal quotation marks omitted); ___ accord County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, ______ ___________________ _________________ 188-89 (1959). In light of this recent characterization of Burford _______ abstention, we have three reasons for questioning whether the doctrine is at all relevant here. In the first place, Burford _______ commands federal courts "sitting in equity" to abjure interference with certain state fora. NOPSI, 491 U.S. at 361. _____ Although enjoining an action in deference to a state proceeding is an exercise of equitable power, the case at hand is a tort action. When, as now, the only equitable power a court is asked to exercise constitutes the very act of abstaining under Burford, _______ 10 we think it is highly questionable whether the court is one "sitting in equity" to which Burford abstention might be _______ available.6 In the second place, NOPSI characterizes Burford _____ _______ abstention as a doctrine shielding "state administrative agencies" from federal court interference. Id. While Puerto ___ Rico's tailored revision of the Rehabilitation and Liquidation Model Act, see P.R. Laws Ann. tit. 26, 4001-4054, sets in ___ place a "comprehensive framework for the liquidation of insolvent insurance companies and the resolution of claims against them," Gonzalez v. Media Elements, Inc., 946 F.2d 157, 157 (1st Cir. ________ _____________________ 1991)(per curiam), we question whether the scheme creates a state administrative agency, as opposed to a judicial structure,7 to ____________________ 6Prior to NOPSI, the Third Circuit considered whether _____ Burford abstention is appropriate when a "court is not being _______ asked to provide equitable relief." Lac D'Amiante Du Quebec v. _______________________ American Home Assurance Co., 864 F.2d 1033, 1044 (3d Cir. 1988). ____________________________ In rejecting the proposition that Burford abstention may turn on _______ the type of relief sought, the court noted that the Supreme Court's discussion of Burford abstention in Colorado River _______ _______________ "failed to mention the relevancy of equitable relief." Id. But, ___ the NOPSI Court specifically described the doctrine as one _____ available to "a federal court sitting in equity." 491 U.S. at 361. Because we believe that this reference cannot be dismissed as language languorously loosed, we conclude that the NOPSI _____ Court's distillation of Burford abstention shines a different _______ light on this issue. We note, moreover, that the Third Circuit, in NOPSI's wake, seems similarly inclined. See University of Md. _____ ___ _________________ v. Peat Marwick Main & Co., 923 F.2d 265, 271-72 (3d Cir. 1991). _______________________ 7The estates of insolvent insurance companies are exempt from the operation of the federal bankruptcy laws. See 11 U.S.C. ___ 109(b)(2) (1988). Thus, the Puerto Rico Insurance Code fashions a format for regulating insurers' insolvencies, rehabilitations, and liquidations, centralizing proceedings into a single court analogous to a federal bankruptcy court wherein the Commissioner, as an agent of the court, functions as a 11 which deference under Burford may be paid. While the Insurance _______ Code regulates insolvent insurers doing business in Puerto Rico, _________ it is not at all clear that it sets up the functional equivalent of an administrative agency. In the third place, Burford abstention is implicated _______ when the federal courts are asked to interfere with state processes by reviewing the proceedings or orders of state _________ administrative agencies, ergo, the requirement of "timely and adequate state-court review." NOPSI, 491 U.S. at 361. In _____ Burford, for example, the Supreme Court abstained in the face of _______ a demand that it review a state railroad commission's order allocating oil drilling rights. See Burford, 319 U.S. at 316-17; ___ _______ see also NOPSI, 491 U.S. at 352-53 (discussing abstention in the ___ ____ _____ context of a challenge to a ratemaking order); Alabama Public ______________ Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 342 (1951) _____________ _________________ (approving abstention from review of a commission order prohibiting the discontinuance of certain local train service). Here, however, we are not being asked to review the actions or decisions of any state body, be it judicial or administrative. Thus, the relevancy of Burford abstention is equally questionable _______ from this standpoint. C. Applying Burford Abstention. C. Applying Burford Abstention. ____________________________ Even assuming, for argument's sake, that Burford _______ remains relevant to this genre of litigation, the current situation affords no occasion for abstention. We explain ____________________ receiver. See P.R. Laws Ann. tit. 26, 4008 (1976). ___ 12 briefly. This appeal frames no "difficult question[] of state law" bearing on significant public policy issues such as would prompt abstention. NOPSI, 491 U.S. at 361 (quoting Colorado _____ ________ River, 424 U.S. at 814). The action merely entails the _____ application of a Puerto Rico statute of limitations, frequently interpreted in the past, to an idiocratic set of facts. Thus, the first avenue to Burford abstention is a dead end. And, _______ moreover, even if difficult or unresolved questions of local law were present and we descry none the presence of such questions, without more, would not justify abstention by a federal court properly sitting in diversity. See Bergeron v. ___ ________ Estate of Loeb, 777 F.2d 792, 800 (1st Cir. 1985), cert. denied, ______________ _____ ______ 475 U.S. 1109 (1986); Construction Aggregates Corp. v. Rivera de _____________________________ _________ Vicenty, 573 F.2d 86, 91 (1st Cir. 1978). _______ We turn, then, to the second roadway to Burford _______ abstention: when federal review will disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." NOPSI, 491 U.S. at 361 (quoting _____ Colorado River, 424 U.S. at 814). Several circuits have _______________ considered whether deciding cases involving insolvent insurance companies would inflict a sufficiently profound dislocation of a state's efforts to develop policies of substantial local concern as to merit abstention, see, e.g., Bilden v. United Equitable ___ ____ ______ ________________ Ins. Co., 921 F.2d 822, 825-27 (8th Cir. 1990), and some have _________ approved abstention in such circumstances. See Barnhardt Marine ___ ________________ 13 Ins., Inc. v. New Eng. Int'l Sur. of Am., Inc., 961 F.2d 529, __________ __________________________________ 531-32 (5th Cir. 1992) (upholding abstention in an action to recover premiums on canceled policies); Martin Ins. Agency, Inc. ________________________ v. Prudential Reinsurance Co., 910 F.2d 249, 254-55 (5th Cir. ___________________________ 1990) (upholding abstention in an action to retrieve reinsurance proceeds); Lac D'Amiante Du Quebec v. American Home Assurance ________________________ ________________________ Co., 864 F.2d 1033, 1042-49 (3d Cir. 1988) (finding abstention ___ appropriate and vacating declaratory judgment); Law Enforcement _______________ Ins. Co. v. Corcoran, 807 F.2d 38, 43-44 (2d Cir. 1986) (finding ________ ________ abstention appropriate in declaratory judgment action), cert. _____ denied, 481 U.S. 1017 (1987). We, ourselves, heretofore ______ abstained in an appeal against an insolvent insurance company so as not to "disrupt Puerto Rico's regulatory system." Media _____ Elements, 946 F.2d at 157.8 ________ Be that as it may, we do not believe, in general, that federal court decisionmaking of the kind that exists alongside state insurance liquidation proceedings so significantly disrupts state regulatory frameworks to call for abstention. After NOPSI, _____ Burford abstention is only appropriate where federal _______ decisionmaking demands "significant familiarity with . . . distinctively local regulatory facts or policies." NOPSI, 491 _____ U.S. at 364. The doctrine's function is to allow a state to develop, where necessary, the uniformity needed to achieve important local interests. Deciding appeals like Fragoso's, ____________________ 8In Media Elements, no one opposed the request for _____ ________ abstention. We granted it by summary order, without extensive analysis. 14 which will have at most an indirect effect on the liquidator's claims process by potentially giving rise to an additional claim against the insolvent insurance company, will neither discombobulate local proceedings nor frustrate the Commonwealth's regulatory system. Just as the federal courts would not abstain from deciding legal issues pertaining to a party involved in a federal bankruptcy proceeding, see, e.g., Picco v. Global Marine ___ ____ _____ _____________ Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990) ("The automatic ____________ stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding."), we can see no reason for Burford _______ abstention simply because the judicial bankruptcy proceedings happen to be before a state court. We believe, therefore, that the circuit court cases favoring abstention in insurer insolvency matters are suspect in light of NOPSI.9 At any rate, they are distinguishable from _____ ____________________ 9This view is neither original nor exclusive to us. See ___ Erwin Chemerinsky, Federal Jurisdiction 111-12 (Supp. 1990) _____________________ (concluding that NOPSI reins in "several . . . lower court _____ decisions expansively interpreting Burford abstention"). One _______ decision specially mentioned by Professor Chemerinsky is Lac ___ D'Amiante, 864 F.2d 1033 a Third Circuit decision on which _________ Media Elements relies. See Media Elements, 946 F.2d at 157. We ______________ ___ ______________ agree with Professor Chemerinsky that Lac D'Amiante is no longer _____________ good law. Burford, as explicated by the NOPSI Court, involves _______ _____ the protection of "complex state administrative processes from undue federal interference, [but] it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." NOPSI, 491 U.S. at 362 (citation and internal quotation _____ marks omitted); see also Chemerinsky, supra, at 112. Indeed, we ___ ____ _____ read the Third Circuit's post-NOPSI caselaw as signalling the _____ demise of Lac D'Amiante. See University of Md. v. Peat Marwick _____________ ___ __________________ ____________ Main & Co., 923 F.2d 265, 272 (3d Cir. 1991); see also Melahn v. __________ ___ ____ ______ Pennock Ins., Inc., 965 F.2d 1497, 1505 (8th Cir. 1992) ____________________ 15 the instant case for a number of reasons. First, in nearly all of those cases, insolvency intervened before the trial court had entered final judgment. Ordinarily, the more embryonic a case, the more significant an interference with the state framework for handling insurance liquidation if the federal tribunal does not yield. A case such as Fragoso's, where a trial is complete and solely legal questions suitable for federal appellate resolution are pending on appeal, is a very weak candidate for abstention. As we have remarked before, abstention serves "the interests not only of federalism, but of comity and judicial efficiency." Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer, 832 ______________________________________________ ________ F.2d 240, 244 (1st Cir. 1987). Once a federal court has rendered a final judgment, it is questionable whether abstention is an efficient or practical move. After all, the liquidator's forum has no mechanism for reviewing a federal court decision. What would become of the original judgment is a puzzle. In Bilden, ______ where the district court rendered its judgment before the insurance company entered liquidation proceedings, see Bilden, ___ ______ 921 F.2d at 824, the Eighth Circuit held that an appeals court's decision on the merits would not interfere with the rehabilitator's control of the insurance company or with the proper operation of the state's regulatory format. See id. at ___ ___ 826. It is difficult to fault so level-headed an approach. Second, the concerns animating abstention in Media _____ ____________________ (observing "that the Third Circuit has cast doubt on the vitality of [Lac D'Amiante] as a result of the Supreme Court's more recent _____________ holding in NOPSI") (citing Peat Marwick Main). _____ _________________ 16 Elements, the one case cited supra where the Burford issue became ________ _____ _______ relevant only on appeal and the court nevertheless abstained, do not apply here. The appeal in Media Elements involved a coverage ______________ issue and, therefore, the court reasoned that abstention would lessen the risk of inconsistent coverage interpretations. See ___ Media Elements, 946 F.2d at 157. Fragoso's appeal, however, ______________ requires that we decide a question of law unrelated to coverage. The case is idiocratic and fact-specific. Passing on this appeal could not possibly impair uniformity in the interpretation of CIS's insurance policies, nor could doing so obstruct the adjudication of claims against CIS in the liquidator's forum. This is a singularly important difference. See Grimes v. Crown ___ ______ _____ Life Ins. Co., 857 F.2d 699, 704 (10th Cir. 1988) (stating that ______________ abstention is less desirable where a suit does not require the court to determine issues which are directly relevant to the liquidation proceeding or to state policies), cert. denied, 489 _____ ______ U.S. 1096 (1989). In fact, it seems more likely that processing the appeal, with the result that the district court's judgment will be affirmed or vacated, would help the Commissioner, for it is totally unclear how the commonwealth forum would resolve the appellate matter, or that it could. The Media Elements panel also observed that compliance ______________ with Puerto Rico's process would reduce the funds which the insurer would have to spend on litigation. See 946 F.2d at 157. ___ Resolving this appeal in the ordinary course, however, would not cost CIS money. The briefs are already filed, and, as previously 17 pointed out, see supra p.7, there is no need for oral argument. ___ _____ Therefore, the concerns that may have warranted abstention in Media Elements are not present here. We are, therefore, _______________ comfortable in limiting Media Elements to its own facts.10 ______________ We need go no further. NOPSI makes clear that Burford _____ _______ abstention requires more than a desire to avoid every inconvenience to, or disruption of, a state's regulatory systems. Otherwise, abstention would be proper "in any instance where a matter was within an administrative body's jurisdiction." Chemerinsky, supra, at 112. That cannot be the rule. It _____ follows, then, that the mere existence of state procedures, or even the existence of a complex state apparatus designed to handle a specific class of problems, does not necessarily justify abstention. See Melahn v. Pennock Ins., Inc., 965 F.2d 1497, ___ ______ __________________ 1505 (8th Cir. 1992). In the final analysis, abstention here would be inconsistent with the policies underlying the constitutional grant of diversity jurisdiction and would render a substantial injustice to those litigants seeking to avail themselves of their statutory right to a federal forum. See ___ Allegheny County, 360 U.S. at 188 (observing that abstention "is ________________ an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it"). We, ____________________ 10We note in passing that, while Media Elements was decided ______________ after NOPSI, the order for abstention neither cited NOPSI nor _____ _____ acknowledged its suzerainty. 18 therefore, decline the invitation to abstain.11 III. THE ENTRY OF SUMMARY JUDGMENT III. THE ENTRY OF SUMMARY JUDGMENT The merits of the appeal need not detain us. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule's mechanics are well known. Once the movant demonstrates "an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the nonmovant _____________ _______ must establish the existence of at least one genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. ___ ________ ____________________ 242, 248 (1986). Where, as here, a motion for summary judgment has been granted, appellate review is plenary. Hence, we must evaluate the entire record in the ambiance most flattering to the summary judgment loser, indulging all reasonable inferences in her favor, in order to determine the propriety of the order. See ___ Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), _______ _________________ cert. denied, 112 S. Ct. 2965 (1992); Griggs-Ryan v. Smith, 904 _____ ______ ___________ _____ F.2d 112, 115 (1st Cir. 1990); Mack v. Great Atl. & Pac. Tea Co., ____ _________________________ ____________________ 11Neither the Commissioner nor the appellees have contended that any idiosyncracy in Puerto Rico's direct action statute, P.R. Laws Ann. tit. 26, 2003, compels a different result. Because of this fact, and because of the utter lack of prejudice to the insurer in the posture of this case, we do not reach the question of whether a liquidator of an insolvent Puerto Rico insurance company may have greater rights to insist upon a local forum when the company is a party to the underlying suit solely by virtue of the direct action statute. 19 871 F.2d 179, 181 (1st Cir. 1989). In this diversity action, the substantive law of Puerto Rico controls. See Erie, 304 U.S. at 78. The statute of ___ ____ limitations governing negligence actions is "one year . . . from the time the aggrieved person has knowledge of the injury." P.R. Laws Ann. tit. 31, 5298 (1990). "Knowledge of the injury," under Puerto Rico law, is a term of art. It requires a showing of both "notice of the injury" and "notice of the person who caused it." Colon Prieto v. Geigel, 115 D.P.R. 232, 247, 15 ____________ ______ Official Translations 313, 330 (1985) (citation omitted). Limitations defenses may appropriately be resolved at the summary judgment stage if reasonable minds could not differ about the legal effect of the properly documented facts of record, taken in the light most favorable to the nonmovant. See Kali Seafood, ___ ______________ Inc. v. Howe Corp., 887 F.2d 7, 9 (1st Cir. 1989); Mack, 871 F.2d ____ __________ ____ at 181. In this case, Fragoso admittedly knew of the injury her mother's demise and she was informed shortly thereafter of the possible link between the injury and medical malpractice. She treated this information as credible and acted upon it, promptly retaining an attorney to explore that very nexus. The question in this case, then, is whether appellant's failure to acquire notice of the person or persons who caused the injury tolled the limitations period. We, like other courts, recognize that it is unfair, by and large, to bar a tort action by the mere passage of time if a 20 plaintiff, exercising due diligence, cannot ascertain the tortfeasor's identity. Because self-induced ignorance of the tortfeasor's identity will not interrupt the limitations period, "[t]he key inquiry under this prong of the `knowledge' requirement is whether plaintiff knew or `with the degree of diligence required by law' would have known whom to sue." Kaiser ______ v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir. _____________________________ 1989) (citations omitted). This means that an inquiring court must ascertain whether ignorance of a fact reflects the plaintiff's negligence, because, if it does, the limitations clock will continue to tick. See Santiago Hodge v. Parke Davis & ___ ______________ _____________ Co., 833 F.2d 6, 8 (1st Cir. 1987); Colon Prieto, 115 D.P.R. at ___ _____________ 244, 15 Official Translations at 327-28. Just as "the limitations period will be suspended only upon a clear showing of diligent efforts to discover the cause of the injury or death," Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 594 (1st ________________ ___________________ Cir. 1989), so the law requires a clear showing of diligent efforts to discover the identity of likely defendants before suspending the prescriptive period. Under Puerto Rico law, if a plaintiff sues in tort more than a year after the injury took place, she bears the devoir of persuasion with respect to proving that she lacked the knowledge which would have enabled her to sue within the prescriptive period. See Kaiser, 872 F.2d at 516; Santiago Hodge, 833 F.2d at ___ ______ ______________ 7. Here, appellant, who sued long after the year had passed, wholly failed to carry her corollary burden. The record reflects 21 an extraordinary delay well over four years between the time appellant first had reason to believe that someone's negligence had caused her mother's death and the time she actually took aim at a particular cadre of defendants. Moreover, the delay was never credibly explained. Although appellant argued before the district court that difficulties in procuring the hospital record caused the delay, her argument was based on freestanding allegations and was, therefore, appropriately rejected. We have made it crystal clear that, in opposing summary judgment, a litigant "may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact." Kelly _____ v. United States, 924 F.2d 355, 357 (1st Cir. 1991); accord ______________ ______ United States v. One Lot of U.S. Currency ($68,000), 927 F.2d 30, _____________ __________________________________ 32 (1st Cir. 1991); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 _______ ________________ (1st Cir. 1990); Mack, 871 F.2d at 181. ____ The only material of evidentiary weight produced in plaintiff's opposition to the summary judgment motion was a partial transcript of her deposition a deposition in which she acknowledged the passage of time but failed to explain it away. Her counsel's arguments, contained in a memorandum filed with the district court, did not suffice to bridge this chasm; after all, proffers that depend not on verified facts but "on arrant speculation, optimistic surmise, or farfetched inference" cannot forestall summary judgment. Kelly, 924 F.2d at 357. We have _____ 22 warned, time and again, that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence." Id. at 358. So it is ___ here. Because the record evinced no credible basis for concluding anything other than that the prescriptive period expired due to some unexplained cause (not excluding appellant's inattentiveness), summary judgment was appropriately entered. IV. THE REFUSAL TO RETRACT IV. THE REFUSAL TO RETRACT In a last-ditch effort to salvage her case, appellant assigns error to the lower court's denial of her motion for reconsideration. In this instance, the motion for reconsideration added one new ingredient to the mix: a sworn statement from appellant's cousin, Nilda Fragoso de Rodriguez. The affidavit relates that Nilda accompanied appellant to the lawyer's office in December, 1984; that the lawyer wanted the decedent's medical records so that he could have them scrutinized by an expert; that Nilda requested the records from Doctor's Hospital in January of 1985; that she returned twice more to the hospital (on unspecified dates) before receiving the record on her third trip (the date of which is also unspecified); that she took the record to the attorney; that, later, on a date again unspecified, she returned to the hospital to get "a certified copy of the full record"; that, after a few telephone inquires on unspecified dates, she received the complete record; and that she delivered it to the lawyer the same day (date unspecified). 23 Bereft, as it is, of even approximate dates, this affidavit is manifestly insufficient to turn the tide. It shows, at most, desultory efforts inadequate to demonstrate diligence in obtaining the records; and, moreover, it wholly fails to suggest any good reason why appellant and her attorney sat complacently by for so long a period of time. Where, as here, a motion for summary judgment has been granted, "the district court has substantial discretion in deciding whether to reopen the proceedings in order to allow the unsuccessful party to introduce new material or argue a new theory." Mackin v. City of Boston, 969 F.2d 1273, 1279 (1st Cir. ______ ______________ 1992), cert. denied, 113 S. Ct. 1043 (1993); accord Mariani-Giron _____ ______ ______ _____________ v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991); United States v. ____________ _____________ 5 Bell Rock Road, 896 F.2d 605, 611 (1st Cir. 1990); Appeal of _________________ _________ Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987), cert. denied, _________________ _____ ______ 486 U.S. 1055 (1988). The trial court's decision on such a motion will be overturned only if the appellant convinces us that the court committed a clear abuse of discretion. See Mackin, 969 ___ ______ F.2d at 1279; Sun Pipe Line, 831 F.2d at 25. Given three major ______________ inadequacies in the motion to reconsider appellant offered no excuse for the belated production of her cousin's affidavit; the affidavit itself raised more questions than it answered; and neither appellant nor her attorney, obviously the key players in the drama, submitted affidavits explaining what had transpired or why they had allowed it to transpire the district court was justified in refusing to exercise its discretion to extricate 24 appellant from her self-dug hole. The provisional stay is dissolved, the appellees' _______________________________________________________ motion for dismissal of the appeal, a statutory stay, or related _________________________________________________________________ relief is denied, and the judgment below is affirmed. Costs to _____________________________________________________ ________ appellees. _________ 25