Glenda REYES SANTANA, Plaintiff,

v.

**HOSPITAL RYDER MEMORIAL, INC., et al., Defendants.**

Monserrate Reyes–Lopez,
et al., Plaintiffs,

v.

Hospital Ryder Memorial, Inc.,
et al., Defendants.

No. CIV. 99–1825(JAF),
CIV. 99–1826(JAF).

United States District Court,
D. Puerto Rico.

Jan. 26, 2001.

David Efron, Rio Piedras, PR, for Glenda Reyes Santana.

Alberto J. Perez-Hernandez, Law offices of David Efron, Rio Piedras, PR, Howard charles, San Juan, PR, for Monserrate Reyes-Lopez, Avelina Santana-Gonzalez, Conjugal Partnership Reyes-Santana.

Teresa M. Garcia-Moll, San Juan, PR, for Hospital Ryder Memorial, Inc.

Jose A. Iguina-De-La-Rosa, Ponce, PR, Carlos G. Martinez-Vivas, Ponce, PR, for American International.

Jose E. O'Neill-Font, San Juan, PR, Benito I. Rodriguez-Masso, Hato Rey, PR, Mirta E. Rodriguez-Mora, Montijo & Morales, San Juan, PR, Humberto Vazquez-Sandoval, San Juan, PR, for Sindicato De Aseguradores De Impericia Medico Hospitalaria.

Jose A. Rivera-Cordero, Hato Rey, PR, for Seguros Triple-S, Inc., Dr. Pedro Rodriguez-Torres.

Mirta E. Rodriguez-Mora, Montijo & Morales, San Juan, PR, for Dr. Luis M. Fernandez-Brito.

Benito I. Rodriguez-Masso, Hato Rey, PR, for Dr. David Flores-Santa.

Humberto Vazquez-Sandoval, San Juan, PR, for Jose Toro-Montalvo.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Glenda Reyes–Santana, Monserrate Reyes–López, and Avelina Santana–González, instituted this Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (1988 & Supp. I.2000), and medical malpractice lawsuit against Defendants, Hospital Ryder Memorial, Inc. ("Ryder Memorial"), American International Insurance Co. ("AIICO"), and unnamed doctors and insurance companies. *Docket Document No. 1.* Ryder Memorial and AIICO filed a third-party complaint against Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico Hospitalaria, ("SIMED") and Seguros Triple S, Inc. ("Seguros Triple S"), as malpractice insurers for six physicians. *Docket Document No. 16.* Defendants move for summary judgment on statute of limitations grounds. *Docket Document No. 21.*

## I.

### Factual Synopsis

On April 11, 1998, Reyes–Santana brought her one-and-a-half-year-old son Reymon to the emergency room at Ryder Memorial in San Lorenzo, Puerto Rico. *Docket Document No. 1.* Reymon allegedly had a fever of thirty-nine degrees Celsius and was experiencing vomiting and diarrhea. *See id.* The doctors administered an acetaminophen suppository and an injection to Reymon before discharging him. *See id.*

Five days later, Reyes–Santana brought her son back to the emergency room at Ryder Memorial because Reymon still exhibited the same symptoms of fever, vomiting, and diarrhea. *See id.* The physicians gave Reymon an injection of Phenergan, as well as serum, before discharging the baby. *See id.*

On April 17, 1998, Reyes–Santana returned to the emergency room at Ryder Memorial because her son remained ill. *See id.* Reymon allegedly received a variety of medicines and serum, but his vomiting and diarrhea did not improve. *See id.* Because the baby's condition was purportedly serious, medical personnel at Ryder Memorial in San Lorenzo decided to transfer Reymon to Hospital Ryder in Humacao, Puerto Rico. *See id.*

At the hospital in Humacao, doctors performed a variety of laboratory tests on Reymon, and physicians treated him with Tylenol and other medication. *See id.* After several hours of treatment, Reymon was discharged early on the morning of April 18, 1998. *See id.*

On the afternoon of April 18, 1998, Reyes–Santana discovered that her son was unconscious. *See id.* Reymon was rushed to Ryder Memorial in San Lorenzo, but doctors there were unable to revive him and the baby was declared dead. *See id.* An autopsy allegedly showed that the cause of death was a hydroelectrolyte imbalance due to severe dehydration. *See id.*

Reyes–Santana alleges that the physicians at Ryder Memorial did not provide urgently-needed medical tests and consultations with specialists because they believed that Reyes–Santana did not have adequate medical insurance to cover those services. *Docket Document No. 26, Exh. A.*

## II.

### Procedural History

On July 22, 1999, Reyes–Santana filed the present action against Ryder Memorial, AIICO, and unnamed doctors and insurance companies, alleging EMTALA and state malpractice claims. *Docket Document No. 1.*

On the same day, Monserrate Reyes–López and Avelina Santana–González, grandparents of Reymon, filed a parallel action individually and on behalf of their conjugal partnership, alleging EMTALA and malpractice claims arising out of the

death of their grandson. *Docket Document No. 1.* This court consolidated the two cases for joint disposition. *Docket Document No. 14.*

Ryder Memorial and AIICO seek indemnity against SIMED and Seguros Triple S. *Docket Document No. 16.* Ryder and AIICO filed a third-party complaint against SIMED, as malpractice insurer for Dr. Luis M. Fernández Brito, Dr. Pedro Rodríguez Torres, Dr. David Flores Santa, and Dr. José E. Toro Montalvo; and against Seguros Triple S, as malpractice insurer for Dr. Arnaldo Reyes Ortiz and Dr. Heriberto Rosado Pérez. *See id.* Ryder Memorial and AIICO allege that these six physicians treated Reymon prior to the baby's death. *See id.*

SIMED and Dr. Fernández Brito move for summary judgment on the ground that the present action is time-barred. *Docket Document No. 21.* SIMED, as insurer for Dr. Rodríguez Torres, Dr. Flores Santa, and Dr. Toro Montalvo; Seguros Triple–S, as insurer for Dr. Arnaldo Reyes Ortiz; AIICO; and Ryder Memorial joined the summary judgment motion. *Docket Document Nos. 52–56, 61.*

### III.

### *Summary Judgment Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–35, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere

allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992) and to "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

## IV.

### Analysis

### A. *Plaintiffs' EMTALA Cause of Action*

■ In 1996, Congress adopted EMTALA to address the problems created by the refusal of hospital emergency rooms to treat patients who did not carry adequate medical insurance. *Reynolds v. Maine-General Health,* 218 F.3d 78, 83 (1st Cir. 2000). Uninsured patients have a remedy against a hospital pursuant to EMTALA in certain situations where a state malpractice claim is not available. *See id.;* 42 U.S.C. § 1395dd(d)(2)(A). EMTALA has two key provisions: 1) hospitals must provide appropriate screening to emergency room patients to determine whether an emergency medical condition exists; and 2) hospitals must provide services necessary to stabilize the patient's condition before releasing him. *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1190 (1st Cir. 1995).

■ Reyes Santana submits that the statute of limitations for filing EMTALA claims is two years. *Docket Document No. 26.* Reyes Santana argues that this action is timely because the complaint was filed well within the two-year prescriptive period. *See id.* We agree. Congress expressly limited the period for filing claims pursuant to EMTALA to two years. 42 U.S.C. § 1395dd(d)(2)(C); *see Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 866 (4th Cir.1994); *Draper v. Chiapuzio,* 9 F.3d 1391, 1393 (9th Cir.1993).

Baby Reymon passed away on April 18, 1998, and Plaintiffs filed their complaints on July 22, 1999. The statute of limitations had not run at the time Plaintiffs initiated the present action. Consequently, we deny Defendants' motion for summary judgment of Plaintiffs' EMTALA cause of action.

■ Defendants argue that EMTALA is governed by a state law statute of limitations of one year. *Docket Document No. 21.* We are not persuaded by Defendants' argument. "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

EMTALA provides: "No action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C). Since EMTALA expressly provides a statute of limitations period, state law's one-year provision does not control in this case. Thus, Plaintiffs' claim, filed within two years of baby Reymon's death, is timely.

### B. *Plaintiffs' Medical Malpractice Cause of Action*

■ In Puerto Rico, medical malpractice claims are governed by the one-year statute of limitations for tort actions.[1] 31 L.P.R.A. § 5298 (1990). The prescriptive period begins to run from "the time the

---

1. Section 5298 of Title 31 of Puerto Rico's Civil Code provides:

    The following prescribe in one (1) year:
    1. Actions to recover or retain possession.
    2. Actions to demand civil liability for grave insults or calumny, and for obli-

    gations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

    31 L.P.R.A. § 5298.

aggrieved person has knowledge" of the injury. *See id.* A plaintiff has "knowledge" of the injury when she has "notice of the injury, plus notice of the person who caused it." *Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997).

■ Defendants argue that Plaintiffs' cause of action accrued on April 18, 1998, the date of Reymon's death. *Docket Document No. 21.* Defendants maintain that Plaintiffs' complaint was not timely, since it was not filed until July 22, 1999, months after the period for filing a malpractice complaint had expired in April 1999. *See id.*

Reyes Santana contends that the complaint was filed within the statutory period for initiating claims, because the statute of limitations was tolled by the delay in providing medical records to Reyes Santana. *Docket Document No. 26.* Reyes Santana argues that she did not have knowledge of the injury until her lawyer's medical expert concluded in May 1999 that the alleged negligent conduct on the part of the physicians had contributed to Reymon's death. *See id.* At the very least, Reyes Santana argues that she did not have knowledge of the injury until she had obtained a complete copy of her son's medical records on March 1, 1999. *See id.*

Reyes Santana allegedly asked Ryder Memorial for the medical records relating to her son's death on April 18, 1998, the day that Reymon passed away. *See id.* On May 16, 1998, she retained attorney Howard Charles to investigate a potential claim arising from the death of her son. *See id.* Ten days later, Reyes Santana purportedly received an incomplete copy of Reymon's medical records that did not include information surrounding the child's death. *See id.* "Because of other commitments and problems related to Hurricane Georges," the documents were not sent to Reyes Santana's medical expert until October 1998. *Id.* at Exh. A. In January 1999, the medical expert informed Reyes Santana and her lawyer that the documents only

included Reymon's records from 1997, not 1998. *See id.*

On February 11, 1999, Reyes Santana's attorney allegedly submitted a second request for Reymon's 1998 medical records. *See id.* Reyes Santana received those records on March 1, 1999, and the documents were forwarded to her attorney's medical expert. *See id.* On May 5, 1999, the medical expert notified Reyes Santana and her attorney that Reymon's death had allegedly been caused by negligent medical care. *Id.* at Exh. A.

■ The statute of limitations is tolled "[i]f a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury." *Rodriguez–Suris,* 123 F.3d at 13–14. Here, Reyes Santana had become aware of a significant likelihood that Defendants might be liable to her for allegedly negligent treatment of her son well before the spring of 1999.

Immediately following Reymon's death, Reyes Santana requested medical records from Ryder Memorial. A month later, she retained attorney Howard Charles to investigate a possible claim arising out of the baby's death. These facts demonstrate that Reyes Santana was on notice that a potential legal claim existed. *Cf. Fragoso v. Lopez,* 991 F.2d 878, 880, 886 (1st Cir. 1993) (affirming that a delayed medical malpractice claim was time-barred where plaintiff knew of her mother's death, retained an attorney to explore a possible malpractice claim, and requested the hospital's records). We find that Reyes Santana had knowledge of her injury for purposes of 31 L.P.R.A. § 5298 by May 16, 1998 at the latest. On that date, she retained a lawyer. At that point, Reyes Santana was sufficiently concerned about the possibility of a malpractice claim that she had sought the services of an attorney to protect her legal rights.

We are not persuaded by Reyes Santana's argument that the statute of limitations was tolled by the delay in obtaining

relevant medical records from Ryder Memorial. Since Reyes Santana had taken action by hiring an attorney on May 16, 1998, the date upon which she subsequently received Ryder Memorial's records does not affect the date of accrual of her malpractice cause of action.

Reyes Santana argues that the statute of limitations was tolled by the filing of an extrajudicial claim. *Docket Document No. 26.* A filing period is interrupted if a creditor makes an extrajudicial claim to the debtor.[2] 31 L.P.R.A. § 5303 (1990).

> [A]n extrajudicial claim does in fact include virtually any demand formulated by the creditor. The only limitations are that the claim must be made by the holder of the substantive right (or his legal representative), ... it must be addressed to the debtor or passive subject of the right, not to a third party, ... and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

*Tokyo Marine & Fire Ins. Co. v. Perez & Cia. De Puerto Rico, Inc.,* 142 F.3d 1, 4 (1st Cir.1998). The Supreme Court of Puerto Rico has strictly required " 'a certain identity between the action instituted and the action tolled.' " *Andino–Pastrana v. Municipio De San Juan,* 215 F.3d 179, 180 (1st Cir.2000) (internal citations omitted). An extrajudicial claim begins tolling the statute of limitations on the date the defendant receives the claim. *Id.*

Reyes Santana maintains that she submitted an extrajudicial claim demanding compensation from Ryder Memorial on May 16, 1999. *Docket Document No. 26.* Plaintiffs' attorney, Howard Charles, drafted a letter to the administrative director of Ryder Memorial summarizing the alleged facts surrounding Reymon's death and demanding payment of damages: "Claimants demand payment of compensation in exchange for their injuries from

Hospital Ryder Memorial, Inc. and the doctors who attended baby Raymond in the amount of Six Million One Hundred and Eight Thousand Dollars." *Id.* at Exh. A. We find that the letter dated May 16, 1999 constitutes an extrajudicial claim by Plaintiffs.

Defendants argue that the May 16, 1999 letter does not toll the statute of limitations because the letter was sent after the filing period had expired on April 19, 1999. *Docket Document No. 46.*

A written demand for compensation from a tort plaintiff to an alleged tortfeasor is an extrajudicial claim that tolls the statute of limitations only if the demand is timely. *Tokyo Marine,* 142 F.3d at 4–5. The plaintiff must present the demand before the filing period has elapsed for the extrajudicial claim to be effective. *See Kery v. American Airlines, Inc.,* 931 F.Supp. 947, 952 (D.P.R.1995).

The critical issue is the date upon which Ryder Memorial received the demand for payment. *Tokyo Marine,* 142 F.3d at 4 ("The prescriptive term is interrupted on the date on which the defendant receives the extrajudicial claim."). The letter itself is dated May 16, 1999, *Docket Document No. 26 at Exh. A,* and it is postmarked May 17, 1999. *Docket Document No. 61.* Ryder Memorial received the document on May 18, 1999. *Docket Document No. 60.*

Plaintiffs' cause of action accrued on May 16, 1998, the date she retained an attorney. The statute of limitations began running on the following day, May 17, 1998. *See Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 175 (1st Cir.1997). The 365–day statute of limitations expired on May 16, 1999, *cf. id.,* two days before Ryder Memorial received the extrajudicial claim on May 18, 1999. Since Reyes Santana's extrajudicial claim did not take effect before the filing period ended, Plaintiffs may

---

**2.** The statute provides: "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." 31 L.P.R.A. § 5303.

not pursue their malpractice claim because it is time-barred.

## V.

### *Conclusion*

In accordance with the foregoing, we **DENY** Defendants' summary judgment motion with regard to Plaintiffs' EMTALA cause of action, and we **GRANT** Defendants' summary judgment motion of Plaintiffs' medical malpractice cause of action due to the running of the statute of limitations.

This Opinion and Order disposes of *Docket Document Nos. 21, 24, 26, and 46.*

**IT IS SO ORDERED.**