DANIEL R. DOMINGUEZ, Senior United States District Judge *101 Pending before the Court are the following motions: (a) APS Healthcare of Puerto Rico, Inc. 's ("APS Healthcare") Motion for Summary Judgment filed at Docket No. 141; (b) Plaintiffs' Response in Opposition to Defendant APS Healthcare of Puerto Rico, Inc.'s Motion for Summary Judgment, at Docket No. 141 , filed at Docket No. 155; (c) Reply to Plaintiffs' Response in Opposition , filed at Docket No. 158. For the reasons set forth below, the APS Healthcare's Motion for Summary Judgment is GRANTED.
Factual and Procedural Background
The instant action was filed on September 30, 2014, and the First Amended Complaint was filed on October 3, 2018, at Docket No. 6. The instant case constitutes a federal question case, wherein the Plaintiffs allege several violations arising under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, as well as, 28 U.S.C. § 1391(a) ; or in the alternative a federal diversity case, under 28 U.S.C. § 1332. Plaintiffs further request that the Court exercise supplemental jurisdiction under 28 U.S.C. § 1367, as to all personal Puerto Rico damages claims brought under 31 L.P.R.A. §§ 5141, 5142 of the Laws of Puerto Rico. Plaintiffs allege that venue is appropriate under 28 U.S.C. § 1391(b), as the matter in controversy exceeds, exclusive of interest and costs, the amount of $ 75,000.00.
In a nutshell, on October 1, 2012, plaintiffs Yomayra and Juan Delgado Caraballo found their mother, Natividad Caraballo Caraballo ("Mrs. Natividad Caraballo"), in a nervous condition and decided to take her to the psychiatric stabilization unit at Hospital Pavia Hato Rey Inc. ("Hospital Pavia Hato Rey"). Mrs. Natividad Caraballo had tried to commit suicide the year before, and was not taking the medications that her psychiatrist has prescribed. The nurse at Hospital Pavia Hato Rey described Mrs. Natividad Caraballo as "alert" but "anxious" and "disoriented." See Delgado-Caraballo v. Hospital Pavia Hato Rey, Inc. , 889 F.3d 30, 32 (1st Cir.2018).
Dr. Marjorie Acosta-Guillot examined Mrs. Natividad Caraballo at Hospital Pavia Hato Rey upon her arrival at the psychiatric stabilization unit on October 1, 2012, and noted that Mrs. Natividad Caraballo's psychiatric history "included a 'suicide attempt 1 [one] year ago' and that she had 'poor compliance or commitment to treatment, exacerbations of depressive symptoms which included anxiety, isolation.' " See 889 F.3d at 32. Dr. Acosta-Guillot further added that Mrs. Natividad Caraballo's "language and psychomotor skills were somewhat diminished, and diagnosed her with 'major depression.' " Id. at 32. Notwithstanding, Dr. Acosta-Guillot found that Mrs. Natividad Caraballo "showed good hygiene, demonstrated logical thought processes, and exhibited no suicidal or homicidal inclinations." Id. at 32.
After examining Mrs. Natividad Caraballo, Dr. Acosta-Guillot was convinced *102 that Mrs. Natividad Caraballo "did not meet the criteria for admission and ... discharged her with instructions that she take her meds [medications] and attend an appointment at an outpatient clinic with APS Healthcare of Puerto Rico ("APS") scheduled for October 3." 889 F.3d at 32.
The record shows that Mrs. Natividad Caraballo attended her appointment at APS on October 3, 2012, as scheduled. However, on that same date during the morning hours, and prior to attending the APS appointment, Mrs. Natividad Caraballo was informed of the passing of her mother-in-law, a person close to her, who has passed away due to cancer and diabetes diseases. See 889 F.3d at 32. Mrs. Natividad Caraballo was accompanied by her daughter Yomayra Delgado Caraballo ("Yomayra") to the APS appointment on October 3, 2012. Id. Mrs. Natividad Caraballo was evaluated by Dr. Nilsa Lopez and "asked her [Mrs. Natividad Caraballo] to continue taking her meds [medications], and scheduled some follow-up appointments." Id. at 32. Unfortunately, Mrs. Natividad Caraballo took her life the next day, October 4, 2012. Mrs. Natividad Caraballo was 52 years old. Id. at 32.
Plaintiffs filed the instant action on September 30, 2014. On March 31, 2017, this Court granted summary judgment on behalf of Hospital Pavia Hato Rey. The Court further dismissed without prejudice the plaintiffs' survivorship EMTALA claim against Hospital Pavia Hato Rey; dismissed with prejudice the EMTALA claim against APS Healthcare Puerto Rico Inc.; and, dismissed without prejudice the remaining of Plaintiffs' supplemental Puerto Rico law claims. An appeal was taken on May 30, 2017. On May 7, 2018, the United States Court of Appeals for the First Circuit ("First Circuit") entered its Opinion , vacating in part and remanding for further proceedings. The First Circuit specifically held:
Our bottom line: We let the summary judgment for APS on the EMTALA claim stand (because plaintiffs don't attack it). But we vacate summary judgment for Hospital Pavia on the EMTALA claim, leaving it to the parties and the judge to work through the joinder and personal-damages issues. And we also vacate the dismissal of the local law claims, leaving it to the parties and the judge to work through the joinder and personal-damages issues. And we also vacate the dismissal of the local-law claims, leaving it to the principals to puzzle out any and all questions related to those claims.
Vacated in part and remanded for further proceedings consistent with this opinion. Costs on appeal to plaintiffs .
889 F.3d at 40.
On July 19, 2018, the Court held a Status Conference, and ordered Plaintiffs to file an amended complaint to include the indispensable parties that were not included in the original complaint, as they are direct heirs of the Estate of Natividad Caraballo Caraballo. The Court emphasized to the parties of their strict compliance with the Opinion and Judgment entered by the First Circuit, on May 7, 2018, and the Mandate entered on May 31, 2018. See Docket entries No. 134, 135, 138. See also Minutes of July 19, 2018, at Docket No. 142.
Issues
The issues before the Court are: (a) whether the Court should dismiss the local law claims as to APS, such as the plaintiffs-heirs of Mrs. Natividad Caraballo and/or other family members who are subject to the joinder of the indispensable parties as heirs; and, if so, (b) whether the *103 dismissal of the local law claims should be with or without prejudice.[1]
Applicable Law and Discussion
A. The Motion for Summary Judgment Standard .
In Miceli v. Jetblue Airways Corp. , 914 F.3d 73, 80-81 (1st Cir. 2019) (Panel composed by Circuit Judges Torruella, Lynch, and Selya, who authored the opinion ), the Court held:
Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, "presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." McKenney v. Mangino , 873 F.3d 75, 80 (1st Cir.2017), cert. denied , --- U.S. ----, 138 S.Ct. 1311, 200 L.Ed.2d 475 (2018). When a plaintiff opposes summary judgment, she [plaintiff] bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co. , 335 F.3d 15, 19 (1st Cir.2003). For this reason, she [plaintiff] cannot rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." Ahern v. Shinseki , 629 F.3d 49, 54 (1st Cir.2010).
In the instant case, the First Circuit specifically held:
We let the summary judgment for APS on the EMTALA claim stand (because plaintiffs don't attack it).... And we also vacate the dismissal of the local law claims, leaving it to the principals to puzzle out any and all questions related to those claims.
See Delgado-Caraballo v. Hospital Pavia Hato Rey, Inc. , 889 F.3d at 40.
On July 19, 2018, APS moved the Court for summary judgment prior to the Status Conference held on even date. APS' Motion for Summary Judgment was filed at Docket No. 141. In a nutshell, APS moved the Court to dismiss with prejudice all the remaining local claims under Art. 1802 of the Puerto Rico Civil Code, 13 L.P.R.A § 5141, as they are time barred, and further, plaintiffs' claims against APS Healthcare under EMTALA have been dismissed with prejudice. See Docket No. 141, p.2.
APS first alleges that the instant Complaint which was filed on September 30, 2014, "was filed after the expiration of the applicable one year statute of limitations period 31 L.P.R.A. § 5298 ] under applicable law." Id. "Mrs. Caraballo's death occurred on October 4, 2012, and the Complaint was filed on September 30, 2014." Id. Second, "Plaintiffs' claims lack any causality as to this particular codefendant [APS]," as plaintiffs failed to amend the Complaint to include "the name of the correct entity which owned [sic] and operates the 'APS Clinic' in controversy in violation of Fed.R.Civ.P.15(a)." See Docket No. 141, p.2. In view of the foregoing, APS Healthcare moved the Court "to dismiss the remaining state law claims with prejudice."See Docket No. 141, p.2.
In the event that subject matter jurisdiction is not warranted, APS moved the Court to dismiss the instant action on the *104 grounds that there is no federal diversity jurisdiction, as plaintiffs and defendants must be citizens of different states. In the instant case, all the parties, except for the two minors plaintiffs who are citizens of the State of Massachusetts, are citizens of the Commonwealth of Puerto Rico. Hence, there is no federal diversity jurisdiction, as both plaintiffs and defendants are citizens of the Commonwealth of Puerto Rico, and failed to comply with the provisions of 28 U.S.C. § 1332. The Court further notes, as to APS, that there is no anchor provided under federal law to authorize supplemental jurisdiction as the federal claim under EMTALA has been dismissed by the district court, as well as by the First Circuit.
APS also moved the Court to dismiss all the supplemental claims under Puerto Rico law, as these claims are time barred. Most critical, under Puerto Rico law, all tort actions brought under Art. 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, shall be filed within one (1) year "from the time the aggrieved person had knowledge thereof ." (Emphasis ours). See 31 L.P.R.A. § 5298, Art. 1868 of the Puerto Rico Civil Code.[2]
B. Rule 19 of the Federal Rules of Civil Procedure : Required Joinder of Parties .
Rule 19 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides in its relevant part:
(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.
(1) Required Party . A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(I) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or other inconsistent obligations because of the interest.
(2) Joinder by Court Order . If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
(3) Venue . If a joined party objects to the venue and the joinder would make venue improper, the court must dismiss that party.
As stated above, the Court held a Status Conference on July 19, 2018 to discuss the First Circuit Opinion of May 7, 2018. At the outset, the Court ordered plaintiffs to file an amended complaint by August 2, 2018, to include two members of the Estate of Natividad Caraballo, to wit, Mr. Juan Delgado Gonzalez, the widower of deceased Mrs. Natividad Caraballo; and, Ms. Vanessa Delgado Caraballo, daughter of deceased Mrs. Natividad Caraballo, who according to plaintiffs' counsel, they are also residents of the Commonwealth of Puerto Rico. The Amended Complaint was *105 eventually filed on October 3, 2018, at Docket No. 154.[3]
The Amended Complaint provides as follows in paragraphs number 6 and 7:
6. Plaintiff Juan Delgado Gonzalez ("Mr. Delgado") is the widower of Mrs. Caraballo, deceased. Mr. Delgado is a citizen and resident of the Commonwealth of Puerto Rico. Mr. Delgado joins in this action exclusively as heir to his deceased wife's cause of action for the damages she suffered as a consequence of the events set forth herein.[4]
7. Plaintiff Vanessa Delgado Caraballo ("Mrs. Delgado") is the daughter of Mrs. Caraballo, deceased. Mrs. Delgado is a citizen and resident of the Commonwealth of Puerto Rico. Mrs. Delgado joins in this action exclusively as heir to her deceased mother's cause of action for the damages she suffered as a consequence of the events set forth herein.
Based on these premises, the first issue raised by the First Circuit regarding the joinder of the two heirs of the late Mrs. Natividad Caraballo now joined in the Amended Complaint , is moot. The joinder of these indispensable parties was feasible since the inception of the original Complaint , hence, the issue of the joinder of these indispensable parties has become a non-issue, as Mr. Delgado-Gonzalez and Ms. Delgado-Caraballo are now plaintiffs in the recently filed Amended Complaint .[5]
Notwithstanding, there are two more issues pending before the Court, to wit: (a) whether plaintiffs are entitled to claim personal damages under EMTALA as to APS;[6] and (b) whether plaintiffs are entitled to claim personal damages "under the law of the State," as explicitly stated under *106 42 U.S.C. § 1399(dd)(d)(2)(A), as to APS.[7] Hence, since the EMTALA provisions do not apply to APS, plaintiffs are not entitled to claim any type of damages under EMTALA.
C. The EMTALA Claims.
At the outset, the Court reviews the holding of the First Circuit, as to EMTALA:
To summarize our EMTALA-claim conclusions: We do not disturb the grant of summary judgment for APS, because plaintiffs do not attack that piece to the judge's decision . But we vacate the entry of summary judgment for Hospital Pavia so the principals can focus on the outstanding matters discussed above, like helping the judge rework the Rule-19 analysis with the right consideration in mind and determine if plaintiffs can and should recover for their personal damages under the EMTALA. (Emphasis ours).
At the outset, it is important to review the applicable EMTALA provisions relevant to our factual scenario. 42 U.S.C. § 1395dd governs the "Examination and treatment for emergency medical conditions and women in labor," both as to the individuals, as well as the participating hospitals, as provided by § 1395cc, and hospitals, as provided by § 1395x(mm)(1). See 42 U.S.C. § 1395dd(e)(2)(5).
Section 1395dd(a) provides a definition of "medical screening :"
In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department , including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of Subsection (e)(1) of this section) exists.
(1) In general. If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either __
(A) within the staff and facilities available at the hospital , for such further medical examination and such treatment as may be required to stabilize the medical condition, or
(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
(Emphasis ours).
......
(d ) Enforcement.
(2) Civil enforcement.
(A) Personal harm.
Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participant hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable *107 relief as is appropriate . (Emphasis ours).
...
(C) Limitations on actions
No action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought . (Emphasis ours).
See Del Carmen Guadalupe v. Negron Agosto , 299 F.3d 15, 19-20 (1st Cir.2002) ; Correa v. Hospital San Francisco , 69 F.3d 1184, 1190 (1st Cir.1995).
Personal Damages under EMTALA
In Correa v. Hospital San Francisco , 69 F.3d at 1190, and 1196, the Court held:
To establish an EMTALA violation, a plaintiff must show that (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition. See Miller v. Medical Ctr. of S.W. La. , 22 F.3d 626, 628 (5th Cir.1994) ; Stevison v. Enid Health Sys., Inc. , 920 F.2d 710, 712 (10th Cir.1990).
HSF attempts to read into section 1395dd(a) an additional requirement: that the patient show that she in fact suffered from an emergency medical condition when she arrived at the emergency room. But EMTALA imposes no such requirement.
...
EMTALA looks to state law, broadly defined to include Puerto Rico law, see 42 U.S.C. §§ 410(h), 1395x(x), anent the availability of damages. It contains the following instruction:
Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located....
42 U.S.C. § 1395dd(d)(2). HSF's argument in effect proposes that we construe the words "individual" and "direct" as denoting the patient herself, and no one else. But this is only one of two possible constructions of the statute. It is equally open to read the law as permitting an individual who has a special relationship with another-say, a wife deprived of consortium or, as here, a bereaved relative-to sue when she is harmed in direct consequence of an EMTALA violation inflicted upon such other. When death results, this reading would naturally extend the statutory prerogative to individuals who are eligible to bring survivors' actions under local law. See , e.g. , Lane v. Calhoun-Liberty County Hosp. Ass'n, Inc. , 846 F.Supp. 1543, 1553 (N.D.Fla.1994) (permitting claimants to recover those damages available to survivors under Florida law); Griffith v. Mount Carmel Med. Ctr. , 842 F.Supp. 1359, 1365 (D.Kan.1994) (affirming award of damages to wife and children of a decedent).
Indeed, EMTALA provides that the individual "who suffers a personal harm" may claim damages "for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." (Emphasis ours). 42 U.S.C. § 1395dd(a)(2)(A). Notwithstanding, *108 any claim under EMTALA shall be brought within "two (2) years after the date of the violation with respect to which the violation is brought." 42 U.S.C. § 1395dd(a)(2)(C). Hence, any other personal damages not covered by EMTALA may be brought under the law of the State in which the hospital is located, as provided by EMTALA, 42 U.S.C. § 1395dd(d)(2)(A). But in order to be able to sue under EMTALA for damages, the individual must have "a direct result of a participant hospital ..." Correa v. Hospital San Francisco , 69 F.3d at 1196. Further, the law as permitting an individual, who has a special relationship with another, such as a wife deprived of consortium or as here a bereaved relative to sue when she is harmed in direct consequence of an EMTALA violation inflicted upon such other." Id. Again, the First Circuit requires an EMTALA violation as to APS, but APS is not an EMTALA hospital participant.
In Correa v. Hospital San Francisco , 69 F.3d at 1196, the Court held:
EMTALA looks to state law, broadly defined to include Puerto Rico law, see 42 U.S.C. §§ 410(h), 1395x(x), anent the availability of damages. It contains the following instruction:
Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located....
42 U.S.C. § 1395dd(d)(2). HSF's argument in effect proposes that we construe the words "individual" and "direct" as denoting the patient herself, and no one else. But this is only one of two possible constructions of the statute. It is equally open to read the law as permitting an individual who has a special relationship with another-say, a wife deprived of consortium or, as here, a bereaved relative-to sue when she is harmed in direct consequence of an EMTALA violation inflicted upon such other. When death results, this reading would naturally extend the statutory prerogative to individuals who are eligible to bring survivors' actions under local law. See , e.g. , Lane v. Calhoun-Liberty County Hosp. Ass'n, Inc. , 846 F.Supp. 1543, 1553 (N.D.Fla.1994) (permitting claimants to recover those damages available to survivors under Florida law); Griffith v. Mount Carmel Med. Ctr. , 842 F.Supp. 1359, 1365 (D.Kan.1994) (affirming award of damages to wife and children of a decedent).
As to medical screening under EMTALA, Correa v. Hospital San Francisco , 69 F.3d at 1192-1193, further held:
Be that as it may, the courts have achieved a consensus on a method of assessing the appropriateness of a medical examination in the EMTALA context. A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints . See Baber v. Hospital Corp. of Am. , 977 F.2d 872, 879 (4th Cir.1992) ; Gatewood v. Washington Healthcare Corp. , 933 F.2d 1037, 1041 (D.C.Cir.1991). The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly . (Double emphasis ours).
We add a caveat: EMTALA does not create a cause of action for medical malpractice . See *109 Gatewood , 933 F.2d at 1041.[8] Therefore, a refusal to follow regular screening procedures in a particular instance contravenes the statute , see Baber , 977 F.2d at 879, but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute . See Brooks v. Maryland Gen. Hosp. , 996 F.2d 708, 711 (4th Cir.1993). (Double emphasis ours).
In sum, under EMTALA, the covered "individual" that has a claim for personal damages is the "individual that comes to a hospital and the hospital determines that the individual has an emergency medical condition." See 42 U.S.C. § 1395dd(a)(1). The individual that potentially has a claim as to a covered individual in the instant case is Natividad Caraballo. However, there was no EMTALA coverage as to APS, as APS is not a participant hospital under the EMTALA provisions.
Plaintiffs are, therefore, left with only a claim under local state law, as EMTALA "does not create a cause of action for medical malpractice." Correa , 69 F.3d at 1192-1193. Further, what is left is purely a matter of Puerto Rico state action case under the application under state law.
Medical Screening
Plaintiffs allege that Hospital Pavia Hato Rey failed to conduct a medical screening. The record shows that when the daughter of Mrs. Natividad Caraballo took her mother to the emergency room, she told the doctor that, "I wanted for her [Mrs. Natividad Caraballo] to be left under observation for at least 24 hours, for them to see, for them to realize the situation that she was in. Because my understanding was that just seeing her, for five minutes, perhaps it was not time enough for the necessary time to come to realize the need that she had at this point in time ." (Emphasis on the original). See Docket No. 141, p.10. The statement of Yomayra Delgado Caraballo, plaintiff-daughter, is used by the Court exclusively for the knowledge of Yomayra Delgado Caraballo, as to her request made to both Hospital Pavia Hato Rey on October 1, 2012, and APS on October 3, 2012, to admit her mother Natividad for observation.
The record shows that after the medical screening was completed at the emergency room of Hospital Pavia Hato Rey on October 1, 2012:
Dr. Marjorie Acosta-Guillot noted that Natividad's psychiatric history included a "suicide attempt 1 year ago" and that she had "poor compliance or commitment to treatment, exacerbations of depressive symptoms which included anxiety, isolation." Natividad's language and psychomotor skills were somewhat diminished, Dr. Acosta-Guillot added. Ultimately, Dr. Acosta-Guillot diagnosed her with "major depression," though the doctor said she showed good hygiene, demonstrated logical thought processes, and exhibit no suicidal or homicidal inclinations. Convinced that Natividad did not meet the criteria for admission to the stabilization unit, Dr. Acosta-Guillot discharged her with instructions that she take her meds [medications] and attend an appointment at an outpatient clinic with APS Healthcare of Puerto *110 Rico ("APS") scheduled for October 3 [2012].
See 889 F.3d at 32.
The Court explains the above only as a background as to the factual scenario at APS.
The record further shows that Mrs. Natividad Caraballo was evaluated by Dr. Nilsa Lopez at APS on October 3, 2012:
On the day of her appointment [October 3, 2012], Natividad's mother-in-law ---- someone she was closed [sic] to ---- died of cancer and diabetes. Natividad still went to APS, accompanied by Yomayra. Dr. Nilsa Lopez evaluated her there, asked her to continue taking her meds, and scheduled some follow-up appointments. Sadly, Natividad committed suicide the very next day, October 4 [2012]. She was 52 years old.
889 F.3d at 32.
In the instant case, the Court considers critical to include the testimony of plaintiff Yomayra Delgado Caraballo relating to the services provided to Mrs. Natividad Caraballo at the facilities of APS, on October 3, 2012.
And I told the physician, with her, that I loved her, that I really cared for her, that I loved her a lot. That I wanted her to be okay. The we were afraid that she would do something against herself. To please help us with the situation.
But my thoughts were that she would be admitted, because we wanted her to be given some treatment, other than the one that she was using, to see if that could help her out. (Emphasis on the original).
See APS' Motion for Summary Judgment , Docket No. 141, p.11.
The record further shows that plaintiff Yomayra Delgado Caraballo was not completely satisfied with the evaluation made to her mother at APS. "As such, she [plaintiff Yomayra Delgado Caraballo] understood that the services given to her mother has not been enough from the moment she complained to the doctor that five minutes was not enough ." (Emphasis ours). See Docket No. 141, p.11. "Plaintiff Yomayra Delgado conceded that both plaintiffs [Yomayra and Juan Ramon Delgado Caraballo] have had their suspicions that her mother was inadequately treated 'months after her suicide .' "[9] (Emphasis ours). Id. These plaintiffs' statements are critical for prescription purposes, in order to determine the date when plaintiffs knew of the alleged cause of the damages that caused the suicide, "under the law of Puerto Rico."
APS further alleges that "[p]rior to the seeking any medical record, on August 13, 2013, Yomayra Delgado Caraballo and Juan Ramon Delgado Caraballo had the following conversation:
Q Okay so when do you recall what was it that you and your brother talked about, when deciding to go and look for the [APS] medical record?
A He [Juan Ramon Delgado Caraballo] told me that he thought about my mother, and the situation in which she was found dead, and the thought that they were going to do something else, that they were going to admit her, or something, upon seeing her in that condition, and they didn't do that.
*111 And after that he decided that, he decided, we decided to go look up the medical record.
Q When was it that you had this conversation with your brother, taking as reference that you went to APS on September 9, 2013?
A It was towards late August . (Emphasis on the original). [See , Dk. 69 p.5, APS's Statement 13]
On September 9th, 2013, almost one month prior to the expiration date to file the complaint, October 4th, 2013, Yomayra Delgado went to the APS Clinic in Caguas an requested a copy of her mother's medical record through a handwritten note passing herself as her deceased mother authorizing her daughter to seek the record. See Dk. 69 p.p. 4-5, APS's Statement 11 and Exhibit 8 and Exhibit 9. She received the medical record within a week. See Dk. 69 p.5, APS's Statement 12. Plaintiff was asked the following:
Q What was the reason for looking up this document in September?
A Well initially, after my mom was dead, I didn't have like - well, after some time, you know, going through the pain and suffering, and dealing with my little girls, and my father, and my brother, so after a while I started thinking, and that' why, you know, I went to get it. I wasn't feeling well, but I went after a while .
See , Dk. 69 p. 5, APS's Statement 13.
...
3.8 Once Yomayra Delgado received the medical record from the APS Clinic, she testified the following:
Q ----yes, one week after, right. And you testified that you took it. And my question is: What happened with the medical record while you were making these efforts [...]
A I kept it for a while . It was under my possession for a while, until I gave it to the attorney who was going with me, who was helping me, to carry out the other steps. But I can't recall for how long.
"Keeping time for a while" is precisely what the above cited statute of limitations doctrine strictly rejects. Plaintiffs have disingenuously argued that they needed all the medical records in order to be able to ascertain the "nature of the negligence" in order to file their complaint. However, plaintiff Yomayra Delgado belies such posturing:
Q Okay. What happened with those three medical records, the one from APS; the one from Hospital Pavia and the one from the psychiatrist?
A The same day they handed us the medical records at the court, she took them with her.
Q Okay. You never read the documents ?
A No.
Q And just to be more specific: You never read the APS record?
A Well, I saw it because I had it in my hands, but I didn't read it.
Q The same question for the Hospital Pavia: Did you read the medical record from Hospital Pavia?
Q Okay. The same question for the medical record of the psychiatrist?
A No.
Q Okay. So your testimony is that Ms. Kimberly Sanders took those medical records. What happened with those medical records afterwards?
A I remember that we had a meeting with Yelitza.
Q Is Yelitza an attorney?
*112 A I believe so. She was a person that was recommended to me by my boss Etzil.
Q When was this meeting with Yelitza?
A It's been a long time. I can't recall - I know that it was after ... (pause) ... I can't recall exactly when it was.
See , Dk. 69 p. 6., APS's Statement 15.
As stated above, the damages actions that stems under an EMTALA violation belongs to the "individual" [patient] but are not transferable, as a matter of right, to the "individual's" heirs, unless there is evidence that there is an EMTALA violation. However, since APS is not an EMTALA participant hospital, the only available alternative for plaintiffs is to claim damages under Puerto Rico applicable law, as provided by the EMTALA statute, 42 U.S.C. § 1395dd(d)(A), but limited only to "months not years," after the death of Mrs. Natividad Caraballo.
The Death of Mrs. Natividad Caraballo
Mrs. Natividad Caraballo took her own life on October 4, 2012. Mrs. Caraballo was the author of her own injury resulting in the taking of her own life, apparently in her home. The record is clear that Mrs. Caraballo's death did not happen at the emergency stabilizing unit at Hospital Pavia Hato Rey, where she was examined and discharged on October 1, 2012 or at the APS facilities in Caguas where she was examined and discharged on October 3, 2012. Indeed, after Dr. Nilsa Lopez evaluated Mrs. Caraballo, Dr. Lopez gave her a follow up appointment for the next month. It is uncontested that the suicidal death of Mrs. Natividad Caraballo occurred on October 4, 2012.
In sum, from the moment that Mrs. Natividad Caraballo made her final decision to take her own life, and executed her plan, from that moment Mrs. Caraballo cut off any rights that may be transferred to her heirs, as a suicidal death is not a tortuous death that is transferable to third parties under Art. 1802.[10] The personal claims for pain and suffering of the deceased Mrs. Natividad Caraballo are simply not transferable to the heirs. See discussion infra at pages 112-13.
The Amended Complaint
Returning to the Opinion of the First Circuit, the Court ordered plaintiffs to file an amended complaint to include the remaining indispensable parties. An Amended Complaint was eventually filed on October 3, 2018, at Docket No. 154. However, the joining of the two new indispensable parties do not change this Court's finding under EMTALA, as what really triggered the unfortunate death of Mrs. Caraballo is an external factor not related to EMTALA and/or the medical services received at APS, who is not a covered entity under EMTALA.
The Court notes that on or about October 3, 2012, Mrs. Natividad Caraballo had notice of the passing of her mother-in-law due to long term diseases of cancer and diabetes. It further appears that Mrs. Natividad Caraballo had a close relationship with her mother in law, and at that point could not manage her emotional situation *113 any longer, leading to the potential decision of taking her own life.
Under local Puerto Rico law, the surviving heirs of a suicidal relative do not inherit a cause of action for the pain of Mrs. Natividad Caraballo, as this was a personal decision taken by Mrs. Natividad Caraballo, and authored by her only, as opposed to an EMTALA violation, or negligence, or medical malpractice, or any other potential cause of action under Puerto Rico law. See discussion infra of the Supreme Court of Puerto Rico in the opinions of Widow of Delgado, et al. v. Boston Insurance Company , 101 D.P.R. 598, 1 P.R.R. Offic. Trans. 823 (1973), 1973 WL 35626 (P.R.), and Crespo, et al. v. Hato Rey Psychiatric Hospital, Inc. , 114 D.P.R. 796, 1983 WL 204150 (P.R.), 14 P.R. Offic. Trans. 1027 (Negron Garcia) (1983), at pages 1029, 1033-1034, 1040-1041.
D. The Supplemental Claims under Puerto Rico Law.
At the end of this journey, the following facts are uncontested:
1. October 1, 2012: Natividad was evaluated and discharged the same day from Hospital Pavia Hato Rey's emergency room with follow up instructions.
2. October 3, 2012: Natividad had knowledge of the passing of her mother-in-law, but attended her appointment as APS, as scheduled, where she was evaluated and discharged on the same date with follow up instructions.
3. October 4, 2012: Natividad committed suicide, and was found by plaintiff Yomayra Delgado Caraballo on the same day.
4. August 13, 2013: Plaintiffs Yomayra Delgado Caraballo and her brother Juan Ramon Delgado Caraballo had a conversation as to the death of her mother, and the reasons why APS declined to authorize their mother's hospital admission, notwithstanding that they wanted her mother to remain at the APS Caguas facility on October 3, 2012.
5. September 9, 2013: Yomayra requested her mother's medical record at APS, which were delivered "within a week."
6. The instant Complaint was filed on September 30, 2014.
The supplemental claims under Puerto Rico law are time-barred .
The record shows that Mrs. Natividad Caraballo took her life in October 4, 2012. Plaintiffs claim at paragraph 49 of the Amended Complaint that:
49. There is a clear and direct causal link between the medical malpractice and/or negligence of defendants Hospital Pavia Hato Rey, Inc., alternatively, John Doe Corporation d/b/a APS Healthcare Puerto Rico, Inc., alternatively, Jane Doe Corporation d/b/a APS Healthcare Puerto Rico, Dr. Marjorie Acosta Guillot, Dr. Nilsa Lopez, John Does 1, 2, and 3 and A, B and C Corporations, and the damages sustained by Plaintiffs, as set forth above.
See Amended Complaint at Docket No. 154, p.11.
Plaintiffs claim negligence of medical practice, and hospital malpractice under Arts. 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 and 5142. Art. 1868, 31 L.P.R.A. § 5298 provides the statute of limitations applicable to Sections 5141 and 5142. These applicable sections provide in their relevant parts, as follows:
*114 Section 5141. Obligation when damage caused by fault or negligence.
A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.
Section 5142. Liability for damages caused by minor, incapacitated person, employee, agent, pupil, or apprentice; liability of Commonwealth.
The obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
The father, and, in the event of his death or incapacitation, the mother, is liable for the damage caused by the minor children living with them.
Guardians are liable for the damages caused by minors or incapacitated persons who are under authority and live with them.
Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of he branches in which the latter are employed or on account of their duties.
The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable.
Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.
The liability referred to in this section shall cease when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage.
Section 5298. Actions which prescribe in one year.
The following prescribe in one (1) year:
(1) Actions to recover or retain possession.
(2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in § 5141 of this title, from the time the aggrieved person had knowledge thereof.
Art. 1868, 31 L.P.R.A § 5298.
At first brush, the Court finds that the original complaint was filed on September 30, 2014 at Docket No. 1. The unfortunate event that triggers the instant complaint was the suicidal death of Mrs. Natividad Caraballo, on October 4, 2012. The family plaintiffs had knowledge of their mother's death since, on or about October 4, 2012. The daughter Yomayra Delgado Caraballo has knowledge as to APS since Yomayra Delgado and her brother Juan Ramon Delgado Caraballo had a conversation on August 13, 2013. During the conversation, plaintiff Yomayra stated that "He [plaintiff Juan Ramon Delgado Caraballo] told me that he thought about my mother, and the situation in which she was found dead, and that he thought that they [APS] were going to do something else, that they [APS] were going to admit her, or something, upon seeing her in that condition, and they [APS] didn't do that." See Docket No. 141, p.11.
It is uncontested that Mrs. Natividad Caraballo passed away on October 4, 2012. Plaintiffs Yomayra and Juan Ramon discussed on August 13, 2013, whether her mother Natividad should have been admitted at APS, on October 3, 2012.
Hence, the heirs of the Estate of Natividad Caraballo had one year from October *115 4, 2012, that is, October 4, 2013, to file any action to claim damages based on fault or negligence under the laws of Puerto Rico, unless the one year statute of limitations is timely tolled, as discussed infra . However, the record shows that the original Complaint as to the personal damages of the family members under EMTALA and Puerto Rico laws, was filed on September 30, 2014. See Docket No. 1.
It is critical to note that the statute of limitations of the supplemental tort claims under Puerto Rico law is one year "from the time the aggrieved person had knowledge thereof." 31 L.P.R.A § 5298. The statute of limitations of the Puerto Rico claims run separately from the EMTALA's statute of limitations which is "two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd (d)(2) Civil enforcement - (C) Limitations on actions. "No action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought." This section refers to the rights of the patient or "individual." (Emphasis ours.)
In the instant case, it is clear from the record that the supplemental claims under Puerto Rico law are time barred, as all the family members listed as plaintiffs, except the minors, of the late Natividad Caraballo knew of her passing on October 4, 2012, or shortly thereafter.[11] Hence, the statute of limitations for supplemental claims of the family members under Puerto Rico law expired on or before October 4, 2013. The original Complaint was filed on September 30, 2014.
EMTALA v. PUERTO RICO LAW
The two year statute of limitations that govern EMTALA specifically provides that "no action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C).
Under Puerto Rico law, however, the one year statute of limitations, as to personal damages, 31 L.P.R.A. § 5298, may be tolled for one year provided that certain tolling requirements are strictly met.
31 L.P.R.A. § 5303. Interruption of prescription.
The prescription of actions is interrupted by their institution before the courts by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.
31 L.P.R.A. § 5304. Effect of interruption on other creditors or debtors and heirs of debtor.
*116 Interruption of prescription of obligations equally benefits or injures all the creditors or debtors.
This provision is likewise applicable with regard to the heirs of the debtor in all kinds of obligations.
In obligations in common, when the creditor does not claim from one of the debtors more than the part pertaining to him, prescription is not interrupted for that reason with regard to the other debtors.
See Morales-Melecio v. United States , 890 F.3d 361, 368-371 (1st Cir.2018) ; Rodriguez-Suris v. Montesinos , 123 F.3d 10, 13-17 (1st Cir.1997) ; Rosa v. Hospital Auxilio Mutuo , 620 F.Supp.2d 239, 248-249 (D.P.R.2009) ; Reyes-Santana v. Hospital Ryder Memorial, Inc. , 130 F.Supp.2d 270, 275-276 (D.P.R.2001).
In Rosa v. Hospital Auxilio Mutuo , 620 F.Supp.2d at 248, the Court held:
The two issues at hand are (a) when the statute began to run, and (b) whether the statute was subsequently tolled for any reason. I first address the more straightforward issue of tolling. The "tolling acts under Puerto Rican law have the effect of causing the limitations period to run anew for another year in full." Rodríguez Narváez v. Nazario , 895 F.2d 38, 45 (1st Cir.1990) ; see MoránVega v. Cruz Burgos , 537 F.3d 14, 22 (1st Cir.2008). One way for the statute to toll is for the plaintiff to make an "extrajudicial claim." P.R. Laws Ann. tit. 31, § 5303 ("Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."). "[A]n extrajudicial claim does in fact include virtually any demand formulated by the creditor [plaintiff]." Rodríguez Narváez v. Nazario , 895 F.2d at 44. The only requirements of an extrajudicial claim are (1) that the claim be made by the holder of the substantive right (or his counsel); (2) that it be addressed to the debtor, not to a third party; and (3) that it demand the same conduct or relief ultimately sought in the subsequent suit. Moran Vega v. Cruz Burgos , 537 F.3d at 21 (citing Rodríguez v. Nazario , 895 F.2d at 44 ). (Emphasis ours).
"The statute begins to run from the time the aggrieved person had knowledge thereof." P.R. Laws Ann. Tit. 31, § 5298." ... "That one-year time clock begins to tick on the day after the date of accrual of the claim ( Carreras-Rosa v. Alves-Cruz , 127 F.3d 172, 175 (1st Cir.1997, per curiam ) ). Santos Espada v. Cancel Lugo , 312 F.3d 1, 4-5 (1st Cir.2002). "For accrual purposes, the injured person must have both notice of her injury and knowledge of the likely identity of the tortfeasor ( Tokyo Marine & Fire Ins. Co. v. Perez & Cia., de Puerto Rico, Inc. , 142 F.3d 1, 3 (1st Cir.1998).)" (Emphasis added). Santos Espada , 312 F.3d at 4-5.
In the instant case, the record shows that the original plaintiffs, Yomayra and her brother Juan Ramon, never interrupted or tolled the one year prescription period under Puerto Rico law, as provided by 31 L.P.R.A. § 5303. Furthermore, the record shows that both Yomayra and Juan Ramon, knew prior to their mother's death of her mother's condition, and urged both Hospital Pavia Hato Rey and APS to admit their mother Natividad for observation. See Docket No. 141, p.p.10-12. Hence, the Court finds that plaintiffs had plenty of time to either file a timely complaint within the one year prescription period, or to timely toll the one year statute of limitations under Puerto Rico law, considering the fact that plaintiffs had knowledge of their mother's death on October 4, 2012.
*117 The record clearly shows the following uncontested chronological facts:
1. On the date of October 1, 2012, date of the original visit to Hospital Pavia Hato Rey, the two original plaintiffs Yomayra and Juan Ramon requested Hospital Pavia Hato Rey's physicians to hospitalize their mother Natividad. See Docket No. 141, p.p.10-11.
2. On October 3, 2012, the original plaintiffs, Yomayra and Juan Ramon also sought that their mother be hospitalized at APS. See Docket No. 141, p.11. As to the other plaintiffs, daughter Vanessa and Juan Delgado Gonzalez, the widower of the late Natividad Caraballo, the Amended Complaint does not toll the prescription period, as the original Complaint per se is time barred. See Morales-Melecio v. United States , 890 F.3d 361, 364-365 (1st Cir.2018). Hence, the Court is impaired to apply the "relation back" of an amendment provided by Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure, as this action was already time barred since its inception. See also Freund v. Fleetwood Enterprises, Inc., et al. , 956 F.2d 354, 363 (1st Cir.1992).
3. On October 4, 2012, plaintiffs had knowledge of Mrs. Natividad Caraballo's death.
4. On October 4, 2012, the one year statute of limitations under Puerto Rico law started to run.
5. On August 13, 2013, plaintiffs made the decision to request Mrs. Natividad Caraballo's medical record at APS.
6. On September 9, 2013, plaintiff "Yomayra Delgado went to APS Clinic in Caguas and requested a copy of her mother's medical record through a handwritten note passing herself as her deceased mother authorizing her daughter to seek the record."[12]
7. Plaintiff Yomayra Delgado Caraballo "received the medical record within a week ,"[13] that is, on or about September 16, 2013. (Emphasis ours).
8. Plaintiff Yomayra Delgado never read the medical records (APS or Hospital Pavia Hato Rey).[14]
9. Heirs Vanessa Delgado Caraballo, daughter of Natividad, and Juan Delgado Gonzalez, the widower of Natividad were not included in the original Complaint , as they did not want to participate in the instant action. See Minutes of July 19, 2018 at Docket No. 142.
10. On October 3, 2018, heirs Vanessa Delgado Caraballo, daughter of Natividad, and Juan Delgado Gonzalez, the widower of Mrs. Natividad Caraballo, joined the Amended Complaint filed at Docket No. 154, and claimed personal damages both under EMTALA, and applicable Puerto Rico laws. See Docket No. 154, pars.37-38.
Hence, it is fair to conclude that even when the plaintiffs had the medical records *118 on their possession since September 16, 2013 (within a week of September 9, 2013), and were at the time assisted by counsel, plaintiffs did not read or review the medical records prior to October 4, 2013. Consequently, the Puerto Rico one year statute of limitations elapsed even considering that plaintiffs received the medical records on or about September 16, 2013, or a few days thereafter, that is, but certainly before the expiration of the statute of limitations on October 3, 2013.
But the fact is that plaintiffs did not need copies of the medical records to file a timely complaint, as they had knowledge of the cause of their mother's death since October 4, 2012. Moreover, plaintiffs sought to have the defendant to be hospitalized at APS on October 3, 2012 precisely out of concern for the health of their mother. See Docket No. 141, p.11. Plaintiffs requested their mother's hospitalization since the dates when Yomayra took her to the emergency room at Hospital Pavia Hato Rey on October 1, 2012, and to APS on October 3, 2012, and both entities denied plaintiffs' request.
Moreover, even a copy of the death certificate would have been sufficient to file a timely complaint to safeguard the one year statute of limitations but they did not act timely. See Morales-Melecio v. United States , 890 F.3d 361, 364-365 (1st Cir.2018). Specially, considering that Yomayra Delgado, and Juan Delgado, the widower, had requested APS the hospitalization of her mother on the day prior to the suicide.
The Court emphasizes that, based on the record, the only statement made by plaintiff Yomayra Delgado to the APS' evaluating professional when she took her mother to the October 3, 2012 appointment, regarding the request for Natividad's admission, is the following:
And I told the physician, with her, that I loved her, that I really cared for her, that I loved her a lot. That I wanted her to be okay. That we were afraid that she would do something against herself. To please help us with the situation .
But my thoughts were that she would be admitted, because we wanted her to be given some treatment, other than the one that she was using, to see if that could help her out . (Emphasis in the original).
See Docket No. 141, p.11. Based on the record, however, the Court finds that the above statement made by Yomayra cannot be interpreted as a direct request to the professional who was evaluating Natividad, to admit her mother as a patient. Yomayra's "thoughts ... that she would be admitted," and a direct request for admission as a patient are inapposite.
Finally, the statute of limitations may have been interrupted also by making an extrajudicial claim, but plaintiffs also failed to timely pursue that option. See Rosa v. Auxilio Mutuo , 620 F.Supp.2d 239, 248-249 (D.P.R.2009), and the collection of cases cited therein. "The tolling acts under Puerto Rican law have the effect of causing the limitations period to run anew for another year in full." Rosa, supra, citing Rodriguez Narvaez v. Nazario , 895 F.2d 38, 44-45 ; see Moran Vega v. Cruz Burgos , 537 F.3d 14, 22 (1st Cir.2008).
In the instant case, it is uncontested that the statute of limitations started to run the day after the death of Mrs. Natividad Caraballo, that is, on October 4, 2012. Plaintiffs found their mother dead on October 4, 2012. But even considering the date when plaintiffs received the medical records at APS, that is, on or about September 16, 2013 as the starting point for the one year statute of limitations under Puerto Rico law, the uncontested fact is that plaintiffs *119 filed the Complaint on September 30, 2014. Hence, the Complaint was time barred prior to its filing, as the one year prescription period elapsed on October 4, 2013, as there are no other facts that tolled the period of one year.
The applicable law and case law are clear on this matter, once the statute of limitation has elapsed there is nothing that can be done to turn back the clock. See Rodriguez-Suris , 123 F.3d at 13.
The Court's exercise of supplemental jurisdiction in a case in which there is no cause of action under a federal statute is discretionary. See 28 U.S.C. § 1367(a). The Court may dismiss the state actions without prejudice should the federal causes of action be dismissed early in the case. Rodriguez v. Doral Mortgage Corp. , 57 F.3d 1168, 1175, 1176 (1st Cir.1995). Therefore, the supplemental claims under Puerto Rico law, as to APS, are dismissed with prejudice, as the Court finds that they are time barred. See also Chardon v. Fernandez , 454 U.S. 6, 7, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982). Further, as stated before, there is also no cause of action as to APS. The Court is not dismissing any cause of action at this time as to the Motion to Dismiss filed by Hospital Pavia Hato Rey on February 6, 2019, at Docket No. 174, which is still pending before the Court. Plaintiffs were granted until February 28, 2019 to reply. See Docket No. 178.
As to the plaintiffs' minor children B.O.G.D. and M.G.D., the Court understands that the case cannot be dismissed with prejudice as to them at this time, until they attain legal age plus one additional year, in order to allow the minors to pursue their rights under Puerto Rico laws. See De Jesus v. Chardon , 116 D.P.R. 238, 16 P.R. Offic. Trans. 290, 309 (1985) ("the action inherited by the minors in this case is not time-barred"). The record further shows that the minors' mother, Yomayra Delgado Caraballo is a plaintiff herein, and that the minors are under the sole custody of their mother. Hence, the Court will dismiss the supplemental claims as to the minors without prejudice, see infra .
EMTALA's statute of limitations is two years.
In Monrouzeau v.Asociacion del Maestro, et al. , 354 F.Supp.2d 115, 118 (D.P.R.2005) :[15]
EMTALA contains a two-year statute of limitations period. Specifically, the statute provides:
No action may be brought under this [statute] more than two years after the date of the violation with respect to which the action is brought.
42 U.S.C. § 1395dd(d)(2)(C).
Statute of limitations in federal legislation will be strictly construed. Hence, tolling or other exceptions thereto will not be allowed unless unequivocally authorized by federal law . In Vogel v. Linde , 23 F.3d 78, 80 (4th Cir.1994) the court ruled that neither EMTALA's legislative history nor its plain language sanctioned the use of equitable tolling. In this vein, the Vogel court declined to extend the two-year term provided in EMTALA by reason of disability. Similarly, in Bowden v. Wal-Mart Stores, Inc. , 124 F.Supp.2d 1228, 1241 (M.D.Ala.2000) and in Brewer v. Miami County Hosp. , 862 F.Supp. 305, 307-308 (D.Kan.1994), the courts rejected an equitable tolling exception for minors in EMTALA suits . Further, *120 prior suits dismissed without prejudice will not affect the two-year term. Burrows v. Turner Mem'l Hosp., Inc. , 762 F.Supp. 840, 843 (W.D.Ark.1991). (Emphasis ours).
This section refers to the time for the patient to file as to EMTALA.
Plaintiffs likewise failed to toll the filing of the action under Puerto Rico law, as provided by 31 L.P.R.A. §§ 5298 and 5303. The mere request of the medical records do not toll the statute of limitations, as the party has to express in writing that they are claiming a potential medical malpractice action as to APS. Further, the parties are entitled to receive a copy of the medical records requested as provided by the Bill of Rights and Responsibilities of the Patient , 24 L.P.R.A. §§ 3041, et seq . Section 3049(e) provides:
(e) Every provider, medical-hospital institution, and every insurer shall provide every patient a speedy access to their files and records. A patient is entitled to receive a copy of his/her medical record within a term which shall not exceed five (5) days, in those cases that the medical record is requested from a medical hospital institution, it shall be furnished within a term of not more that fifteen (15) working days, through the payment of a reasonable cost, which shall not exceed seventy-five cents (75 cents) a page, up to a maximum of twenty-five dollars ($ 25) for the medical record.
Whenever any of the parties, to wit the medical services provider or the patient, concludes the physician-patient relationship, said medical record shall be furnished to the patient, father, mother, or custodian free of charge, within a term that shall not exceed five (5) working days. The fact that an outstanding debt exists between the physician and the patient shall not be an impediment for the patient to obtain his/her medical record.
In the instant case, the record shows that plaintiff Yomayra Delgado Caraballo requested the medical record of her deceased mother to APS on September 9, 2013, and received it "one week later," that is, almost on the eve of the expiration of the Puerto Rico statute of limitations applicable to potential medical malpractice actions, that is, October 4, 2013, one year after the unfortunate death of Mrs. Natividad Caraballo. See Docket No. 141, p.12. Further a mere request of a medical record pursuant to Puerto Rico law does not toll the statute of limitations, as provided by 31 L.P.R.A. § 5303. See also Morales-Melecio v. United States , 890 F.3d 361, 368-371 (1st Cir.2018) ; Rodriguez-Suris v. Montesinos , 123 F.3d 10, 13-17 (1st Cir.1997) ; Rosa v. Hospital Auxilio Mutuo , 620 F.Supp.2d 239, 248-249 (D.P.R.2009) ; Reyes-Santana v. Hospital Ryder Memorial, Inc. , 130 F.Supp.2d 270, 275-276 (D.P.R.2001).
A Final Note on the Puerto Rico Supplemental Law Claims
Even assuming arguendo that the supplemental claims under Puerto Rico law are timely, which we find that they are not, there is no actionable causes of action under Art. 1802 for the unfortunate passing of Mrs. Natividad Caraballo, as no damages may be claimed under Art. 1802 when the cause of death is suicide. Under Puerto Rico law, the pain and suffering of the person who engages in a suicide is not inherited by the deceased heirs. See Widow of Delgado, et al. v. Boston Insurance Company , 101 D.P.R. 598, 1 P.R. Offic. Trans. 823 (1973), 1973 WL 35626 (P.R.). See also Crespo, et al. v. Hato Rey Psychiatric Hospital, Inc. , 114 D.P.R. 796, 1983 WL 204150 (P.R.), 14 P.R. Offic. Trans. 1027 (Negron Garcia) (1983).
*121 In Widow of Delgado , 1 P.R. Off. Trans. at 825-826, the Supreme Court of Puerto Rico is clear when it makes a distinction between the unlawful death as a result of a tortuous action, or a "personal action of the original victim." However, "we can differentiate them by calling one the inherited or patrimonial action and the other the direct or personal action." Widow of Delgado . Id. , p.p. 825-826. But the cause of action "inherited" cannot be exercised by anyone, as it is not transferable to the deceased heirs. Widow of Delgado , 1 P.R. Offic. Trans. at 825. In sum, the unfortunate death of Mrs. Natividad Caraballo does not stem from a tortuous action, as Mrs. Caraballo voluntarily took her own life. The Amended Complaint specifically alleges at paragraphs 22 and 23, as follows:
22. Importantly, according to an APS progress note dated October 3, 2012, psychological evaluation confirms exacerbation of depressive symptoms and past history of suicide, however, instead of referring Mrs. Caraballo to a partial hospitalization program in order to supervise her more closely and better treat her symptoms, she was given an appointment to see an APS psychiatrist more than a month later.
23. The very next day, on October 4, 2012, Mrs. Caraballo committed suicide and was found by her brother and her daughter and co-plaintiff, Mr. Delgado-Caraballo [her son].[16]
See Docket No. 154, p.5.
Hence, it is correct to conclude that the death of Mrs. Caraballo is not a result of a tortuous action, but a personal suicidal decision taken by her, presumably at her home. See also Crespo, et al. v. Hato Rey Psychiatric Hospital, Inc. , 114 D.P.R. 796, 1983 WL 204150 (P.R.), 14 P.R. Offic. Trans. 1027 (Negron Garcia) (1983). In Crespo , the Court held, "[t]his action deals with the ultimate psychological paradox of one's fellow man: suicide." 114 P.R.R. at 1029. Mr. Crespo, a 34 years old male, was hospitalized on February 24, 1981, by his mother and his sister. Mr. Crespo was found dead in his ward, on May 3, 1981 at 12:50 in the morning. 114 P.R.R. at 1030. "He was hanging by his neck from a bed sheet tied to a window of the dining room area in Ward SB3." Id. "His death was certified as asphyxia by strangulation (suicide)." Id. The Court held that Crespo's "death did not occur shortly after he was committed to the hospital, but more than two months later.... By then the patient had been under daily observation and interviewed eleven (11) times by different physicians." Id. "During the evolution of the symptoms, at no time did he give any sign, said or did anything in particular that would transmit the idea that he planned to commit suicide. None of the physicians detected it. Neither did the nurses nor the paramedics." Id. The Supreme Court of Puerto Rico held that "the defendant hospital did not incur [in] institutional and professional malpractice generating liability." Crespo v. Hato Rey Psychiatric Hospital Inc. , 114 P.R.R. at 1040-1041.
The Court reiterates that under Puerto Rico law, the heirs have no right to claim personal damages for their pain and suffering caused by their mother's suicidal death, as Natividad's pain and suffering are not transferable or inheritable. See Widow of Delgado , 1 P.R. Off. Trans. at 825-826 ;
*122 Crespo, et al. v. Hato Rey Psychiatric Hospital, Inc. , 114 D.P.R. 796, 1983 WL 204150 (P.R.), 14 P.R. Offic. Trans. 1027 (Negron Garcia) (1983), at pages 1029, 1033-1034, 1040-1041. The remaining causes of actions are all dismissed with prejudice, as they are time barred.
Therefore, the Court finds that all supplemental claims based on Puerto Rico law are hereby dismissed as to APS with prejudice, as: (a) there is no cause of action under Art. 1802; or if there is one, (b) the cause of action is time barred, as the plaintiffs knew of the death since on October 4, 2012, and the original Complaint was filed on September 30, 2014. Further, there is no cause of action as to EMTALA, as the Court of Appeals dismissed this cause of action as to APS, and, hence no personal damages as to EMTALA can be claimed. As to the damages for medical malpractice at APS, the damages under local Puerto Rico law are all prescribed.
Lastly, plaintiffs argued in their Response in Opposition to Defendant APS Healthcare of Puerto Rico, Inc.'[s] Motion for Summary Judgment, at Docket No. 141 , filed at Docket No. 155, that the Supreme Court of Puerto Rico "have been flexible with regard to the computation of the year period of limitation provided by Puerto Rico Civil Code sec. 1868." ... [W]e have stated that the moment established as the true starting point in an action for damages is the date on which the aggrieved party discovered the damage, found out who caused it, and had knowledge of the necessary elements to effectively assert his or her cause of action ...." (Emphasis in the original). Vera v. Dr. Bravo , 161 D.P.R. 308, P.R. Offic. Trans., 2004 WL 540534 (2004).
The Court, however, is not persuaded by plaintiffs' last minute argument. In Vera v. Dr. Bravo , 161 D.P.R. 308, P.R. Offic. Trans., 2004 WL 540534 (2004), the Supreme Court held that "the starting point in an action for damages is the date on which the aggrieved party discovered the damage ." (Emphasis ours).
In the instant case, it is uncontested that the plaintiffs or aggrieved parties knew of the depression condition of Mrs. Natividad Caraballo on October 3, 2012, and requested or thought that their mother should be hospitalized at APS. See supra at p. 118.
On October 4, 2012, plaintiffs knew of the damage, when they found Mrs. Natividad Caraballo dead at her house, as alleged in paragraph number 23 of the Amended Complaint filed at Docket No. 154, which is exactly the same allegation made by plaintiffs in the original Complaint in paragraph number 21, filed at Docket No. 1.
Hence, it is uncontested that plaintiffs' "starting point in an action for damages" is October 4, 2012, as opposed to the later date when the heirs were able to obtain copies of the medical records of Mrs. Natividad Caraballo. But even assuming that the one year statute of limitations starts to run on the date that the plaintiffs received the medical record, which we don't, the complaint is nevertheless time barred, as the the APS medical record was obtained on or about September 16, 2013, and the complaint was filed on September 30, 2014. The one year statute of limitations under Puerto Rico law elapsed on October 4, 2013.
The Court further reminds the parties that the "estate" or "succession" is not a legal entity. Only the members that compose the estate or "succession" have legal rights to enforce any legal action. See also Vilanova v. Vilanova , 184 D.P.R. 824, 839-840 (2012) ; Arias-Rosado v. Gonzalez-Tirado , 111 F.Supp.2d 96, 98-99 (D.P.R.2000).
Compliance with the First Circuit Mandate
As to the Mandate issued by the First Circuit, this Court now rules as follows:
*123 1. This Court has complied by joining the indispensable parties, that is, the new family members of Mrs. Natividad Caraballo, to wit, Mr. Juan Delgado Gonzalez, the widower, and Ms. Vanessa Delgado Caraballo, daughter of the deceased. See the Amended Complaint at Docket No. 154, paragraphs number 6 and 7. However, as stated before, the succession per se has no legal standing as the Supreme Court of Puerto Rico has stated since the year 1917, that a "succession" is not "a juridical person in our statutes." Danz v. Suau , 82 P.R.R. at 595 (providing several analogies). See also Arias-Rosado v. Gonzalez Tirado , 111 F.Supp.2d at 99, wherein the Court held:
On the same vein we find that the other members of the estate are not indispensable parties as to the survivorship cause of action. The fact that the succession is not an entity separate and apart from its members does not mean that all the participants must always appear together to assert or defend matters affecting the estate. On the contrary, the Supreme Court of Puerto Rico has consistently held that being a succession a compulsory community of property and rights, any of the heirs or part thereof may appear at the trial to defend his/her common rights. If he/she prevails, his/her victory is for the benefit of all the co-owners. See Danz v. Suau , 82 P.R.R. at 595; Tropigas de Puerto Rico v. Tribunal Superior , 102 D.P.R. 630, 641 (1974).
Furthermore, the personal damages claim under Puerto Rico law, Art. 1802 of the Civil Code of Puerto Rico, § 5141, are time barred, as the statute of limitations is one year, "from the time the aggrieved person had knowledge thereof." Art. 1868 of the Civil Code of Puerto Rico, § 5298. In the instant case, the heirs of the late Mrs. Natividad Caraballo knew of her unfortunate death on October 4, 2012. As expressed infra the principal plaintiff Yomayra Delgado Caraballo, the daughter of Mrs. Natividad Caraballo, knew the cause of action a day before her mother's death, as she requested APS to hospitalize her mother.[17] Hence, the instant action is time barred, as to all the supplemental claims under Puerto Rico law, except as to the minors.
The Court disagrees with the plaintiffs that all the heirs must be included in the complaint. See Danz v. Suau, 82 P.R.R. at 595.
In Danz v. Suau , the Court held:
The "succession" has no existence as a juridical person in our statutes ___ Arvelo et al. V. Banco Ter. y Agr. , 25 P.R.R. 677, 686 (Hernandez, Chief Justice) (1917); Vega v. Garcia , 61 P.R.R. 95, 96-97 (Del Toro) (1942); Heirs of Belaval v. Acosta , 64 P.R.R. 104, 106 in fine and 107 (Travieso) (1944); Godreau & Co. , 64 P.R.R. 310, 317 (Travieso) (1944); Fuentes v. District Court , 73 P.R.R. 893, 921 (Ortiz) (1952). Since the "succession" is not an entity distinct and separate from the persons *124 composing the same, each one of the defendants in this case may adopt a different attitude regarding the complaint, and his rights should be judged separately.
Hence, the instant action is time barred as to all potential claims that stems under Puerto Rico law, as the record is silent as to whether there was any timely act taken by the heirs to toll the statute of limitations of one year.[18]
2. All supplemental claims under Puerto Rico law are time barred, even after joining the two indispensable parties, on two grounds: (a) all Puerto Rico supplemental law claims are time barred; and (b) under applicable precedents of Art. 1802, the heirs of the person that took her own life or committed suicide do not inherit a personal damages cause of action, as to the victim. A suicide death is a self-inflicted action taken voluntarily by Mrs. Natividad Caraballo who was the person that ultimately made this tragic decision. See Morales-Melecio v. United States , 890 F.3d 361 (1st Cir.2018) ; Rodriguez-Suris v. Montesinos , 123 F.3d 10 (1st Cir.1997) ; Widow of Delgado, et al. v. Boston Insurance Company , 101 D.P.R. 598; 1973 WL 35626 (P.R.), 1 P.R. Offic. Trans. 823 (1973).
3. This case is now closed as to the EMTALA claims against APS Healthcare Puerto Rico, Inc., as per the First Circuit Opinion .
4. The First Circuit did not disturb this Court's ruling, as to EMTALA, hence, no further action need to be taken by this Court on the APS' EMTALA claim.[19]
5. All the claims under Puerto Rico laws, as to APS, are dismissed with prejudice under 31 L.P.R.A. § 5298, as they are time barred. Moreover, there is no EMTALA claim as to APS.
6. Under Puerto Rico laws, the Court cannot dismiss with prejudice this case as to the minors until they attain legal age plus one additional year in order to pursue their rights, by filing the appropriate action. See De Jesus v. Chardon , 116 D.P.R. 238, 16 P.R.R. 290, 309 (1985) ("the action inherited by the minors in this case is not time-barred").
Conclusion
For the reasons stated above, the Motion for Summary Judgment filed by APS Healthcare Puerto Rico, Inc., at Docket No. 141, is GRANTED. After having joined two indispensable parties, the Court finds that all the supplemental Puerto Rico law claims against APS Healthcare Puerto Rico, Inc. are time barred, except as to the two minors. The action as to the minors cannot be dismissed, until the minors attain legal age to pursue their rights in this action. See *125 De Jesus v. Chardon , 116 D.P.R. 238, 16 P.R.Offic.Trans. 290, 309 (1985). Hence, this case is dismissed with prejudice, as to all the Puerto Rico supplemental claims against APS Healthcare Puerto Rico, Inc., except as to the minors, which the claims are dismissed without prejudice.
The Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. See Nichols v. Cadle Co. , 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine , 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule ... furthers 'the strong congressional policy against piecemeal review.' " Id. (quoting In re Continental Investment Corp. , 637 F.2d 1, 3 (1st Cir. 1980) ); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority , 888 F.2d 180, 183 (1st Cir. 1989) ; Consolidated Rail Corp v. Fore River Ry. Co. , 861 F.2d 322, 325 (1st Cir. 1988) ; Spiegel v. Trustees of Tufts Coll. , 843 F.2d 38, 43 (1st Cir. 1988) ; Santa Maria v. Owens-Ill., Inc. , 808 F.2d 848, 854 (1st Cir. 1986) ); see also United States v. Nixon , 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).
IT IS SO ORDERED.

The Court will only address whether the plaintiffs may claim personal damages under EMTALA, notwithstanding that EMTALA does not apply to APS Healthcare Puerto Rico, Inc. However, the Court will focus on the joinder of indispensable parties, and the supplemental claims under Puerto Rico law, but only as to APS Healthcare Puerto Rico, Inc. Hospital Pavia Hato Rey is not a subject of this Opinion and Order . The Court is cognizant of the Motion to Dismiss filed by Hospital Pavia Hato Rey on February 6, 2019, at Docket No. 174, which will be entertained by the Court on a separate order after the Court analyzes the objection of plaintiffs once it is filed.

This matter will be discussed in detail under Section D of this Opinion .

The Court notes that at the Status Conference held on July 19, 2018, Plaintiffs' counsel informed the Court that the new parties to be joined, to wit, the widower and a deceased daughter of the late Mrs. Natividad Caraballo, will not claim any damages. See Minutes of July 19, 2018 at Docket No. 142. The Amended Complaint is silent as to this important fact, which is critical to resolve Plaintiffs' EMTALA issues, as well as Plaintiffs' supplemental claims under Puerto Rico law. See Amended Complaint , Docket No. 154, p.9, par.38, wherein plaintiffs Juan Delgado Gonzalez and Vanessa Delgado Caraballo "claim the physical and emotional damages suffered by their deceased mother and wife respectively."

Precisely, the Supreme Court of Puerto Rico has stated that in cases of suicide, the rights and suffering of the deceased victim (the mother/wife in this case), cannot be claimed by any other party when the cause of death is suicide, including the treating hospital, see Widow of Delgado v. Boston , 101 D.P.R. 598, 1 P.R. Offic. Trans. 823 (1973), 1973 WL 35626 (P.R.) ; Crespo, et al. v. Hato Rey Psychiatric Hospital , 114 D.P.R. 796, 1983 WL 204150 (P.R.), 14 P.R. Offic. Trans. 1027 (Negron Garcia), at pages 1029, 1033-1034, 1040-1041). See also the collection of cases cited in the instant Opinion and Order , infra .

The Court does not understand plaintiffs' insistence in using the word "heirs" and or "succession," as the Supreme Court of Puerto Rico has determined that the "succession" has no personal capacity as a person under Puerto Rico law. See Danz v. Suau , 82 P.R.R. 591, 595 (1961). In Danz v. Suau , 82 P.R.R. at 595, the Supreme Court of Puerto Rico held:
"The "succession" has no existence as a juridical person in our statutes-Arvelo et al. v. Banco Ter. Y Agr. , 25 P.R.R. 677, 686 (Hernandez, Chief Justice) (1917); Vega v. Garcia , 61 P.R.R. 95, 96-97 (Del Toro) (1942); Heirs of Belaval v. Acosta , 64 P.R.R. 104, 106 in fine and 107 (Travieso) (1944); Fuentes v. District Court , 73 P.R.R. 893, 921 (Ortiz) (1952). Since the "succession" is not an entity distinct and separate from the persons composing the same, each one of the defendants in this case may adopt a different attitude regarding the complaint, and his rights should be judged separately."

See Delgado-Caraballo, et al. v. Hospital Pavia Hato Rey, Inc., et al ., 889 F.3d at 40.

But the law of the State is not merely the substantive damages, but it also includes the State presumption of the substantive law of damages.

In Gatewood , 933 F.2d at 1041, the Court held;
While we agree with appellant that the statute reaches "any individual" seeking emergency room care, we cannot agree that it creates a sweeping federal cause of action with respect to what are traditional state-based claims of negligence or malpractice. Mrs. Gatewood's allegations of misdiagnosis, without more, are simply not cognizable under the Emergency Act.

As to Yomayra Delgado Caraballo (daughter of Natividad) and Juan Ramon Delgado Caraballo (son of Natividad), the Court emphasizes "months after the suicide" is not years after the suicide.

However, the suicidal death of Mrs. Caraballo was apparently unpredictable based on the evaluation made by Dr. Acosta-Guillot on October 1, 2012, when she discharged Mrs. Caraballo "convinced that Natividad did not meet the criteria for admission to the stabilization unit, and discharged her with instructions that she take her meds [medications] and attend an appointment at an outpatient clinic with APS Healthcare of Puerto Rico scheduled for October 3 [2012]." Delgado-Caraballo v. Hospital Pavia Hato Rey, Inc. , 889 F.3d at 32.

It is clear that plaintiffs Yomayra Delgado Caraballo, daughter of the deceased Natividad Caraballo, and Juan Ramon Delgado Caraballo, son of the deceased Natividad Caraballo, knew even before the date of the death of their mother Natividad Caraballo that they both wanted that Hospital Pavia Hato Rey, as well as APS to hospitalize their mother Natividad before her suicidal death on October 4, 2012. See Docket No. 141, p.p.10-11. Both plaintiffs Yomayra Delgado Caraballo and her brother Juan Ramon Delgado Caraballo wanted their mother Natividad to be hospitalized. Vanessa Delgado Caraballo, daughter of the deceased Natividad Caraballo, and included in the Amended Complaint , Docket No. 154, did not want to participate in the instant case, pursuant to the admissions made plaintiff Yomayra Delgado Caraballo in a deposition. See Docket No. 71-2, p.8. Likewise as to Mr. Juan Delgado Gonzalez, the widower of Mrs. Natividad Caraballo, who did not want to participate as plaintiffs, as counsel so stated at the Conference. However, the record shows that Vanessa and Juan Delgado, the widower, later joined the Amended Complaint filed on October 3, 2018, at Docket No. 154. See also the Minutes of July 19, 2018, at Docket No. 142.

See , Docket No. 141, p.12, par. 3.7, and the references cited therein.

See Docket No. 141, p.12, par.3.7.

Id. But this is not a tolling since the defendant has not provided a letter to either hospital that would have tolled the one year statute of limitations to file the complaint. See Rodriguez Nazario , 895 F.2d at 44, containing the three elements required to perform a valid "interruption" to the prescription of personal damages cases.

Monrouzeau v. Asociacion del Maestro, et al. , 354 F.Supp.2d 115, 118 (D.P.R.2005), affirmed , 153 Fed.Appx. 7 (1st Cir.2005).

The Court assumes that Mrs. Natividad Caraballo was found dead at her home, as she was not referred to a partial hospitalization program, as averred on paragraph number 22 of the Amended Complaint , filed at Docket No. 154, p.5. The Amended Complaint , however, is silent on this matter.

The other plaintiffs are Yomayra's brother, Juan Ramon Delgado Caraballo, her sister Vanessa Delgado Caraballo, and Juan Delgado Gonzalez, the widower, as well as the minors included in the original Complaint , who are Yomayra Delgado Caraballo's children, to wit, B.O.G.D. and M.G.D. The plaintiffs are barred from arguing that the Complaint tolled the statute of limitations under Puerto Rico laws, as the original Complaint was already time barred when filed on September 30, 2014.

Certainly, the request of a medical record prior to the expiration of the statute of limitations does not constitute a tolling act, as it does not comply with the provisions of 31 L.P.R.A. § 5303. See Morales-Melecio v. United States , 890 F.3d 361, 368-371 (1st Cir.2018) ; Rodriguez-Suris v. Montesinos , 123 F.3d 10, 13-17 (1st Cir.1997) ; Rosa v. Hospital Auxilio Mutuo , 620 F.Supp.2d 239, 248-249 (D.P.R.2009) ; Reyes-Santana v. Hospital Ryder Memorial, Inc. , 130 F.Supp.2d 270, 275-276 (D.P.R.2001).

The Court cannot act upon the minors claims at this stage of the proceedings, as the Court has pending the Motion to Dismiss filed by Hospital Pavia Hato Rey, on February 6, 2019, at Docket No. 174, and plaintiffs were granted until February 28, 2019 to reply.